**SUN WORLD, INC. Plaintiff,**

v.

**Gaspar LIZARAZU OLIVARRIA
Defendant.**

**No. CV–F–91–269–REC.**

United States District Court,
E.D. California,
Fresno Division.

May 15, 1992.

---

**25.** See Keker decl. at para. 14; Baum decl. at para. 15.

Donald L. Morrow and Viveca Parker of Paul, Hastings, Janofsky & Walker, Costa Mesa, Cal., and Joseph Michael Marchini of Baker, Manock & Jensen, Fresno, Cal., for plaintiff.

Barry Lee Goldner of Klein, Wegis, De-Natale, Hall, Goldner & Muir, Bakersfield, Cal., and Walter Whelan of McCormick, Barstow, Sheppard, Wayte & Carruth, Fresno, Cal., for defendant.

## ORDER GRANTING SUN WORLD'S MOTION FOR A PRELIMINARY INJUNCTION

COYLE, Chief Judge.

On May 4, 1992, the court heard Sun World's motion for a preliminary injunction. Upon due consideration of the written and oral arguments of the parties, the court now enters its order granting the motion as set forth herein.

### I. *Background*

In 1986 and 1987 Sun World and Lizarazu entered into two contracts through which Sun World became the exclusive marketing agent for grapes grown by Lizarazu. In contemplation of a new contract Sun World advanced sums of money and grapevines to Lizarazu. Although the new contract was never signed, Lizarazu failed to return the advance or the grapevines. Sun World subsequently filed this suit on May 30, 1991, seeking restitution.

On June 14, 1991, Sun World filed an application for a right to attach order and the issuance of a writ of attachment. In opposing this application Lizarazu filed an allegedly forged document. On July 8 and 9, 1991, he filed two separate cases against Sun World in Mexico. On July 30, 1991, this court determined that it had personal jurisdiction over Lizarazu and granted Sun World's application for a right to attach order and issuance of a writ of attachment. The court also issued a show cause order why sanctions should not be imposed on Lizarazu for filing the allegedly forged document.

Lizarazu filed a counter-claim on August 26, 1991.

After the hearing on the show cause order the court withheld its decision regarding Lizarazu's alleged fraud pending a 90 day period of discovery. During this period Sun World noticed Lizarazu's deposition but he failed to appear. He also failed to respond to interrogatories propounded by Sun World. On April 13, 1992, Magistrate Beck heard Sun World's motion seeking either sanctions for Lizarazu's failure to appear, or an order that Lizarazu appear

for a deposition. On April 16, 1992, Magistrate Beck issued an order compelling Lizarazu to appear for a deposition and testify regarding the circumstances surrounding the alleged forged document by April 25, 1992, or show cause on May 4, 1992, why his counter-claim should not be dismissed, his answer stricken, and default judgment entered against him. Lizarazu appeared for his deposition on April 24, 1992, and invoked his 5th Amendment right against self-incrimination in response to virtually every question posed of him. He refused to answer any substantive questions related to the alleged forged document.

In this motion Sun World seeks an order enjoining Lizarazu from prosecuting the Mexican cases, arguing that those cases are duplicative, that defending them would be prejudicial to Sun World and prohibitively costly, would produce the danger of inconsistent judgments, and would give effect to Lizarazu's obvious strategy of ignoring this court's authority. Accordingly, Sun World now seeks (1) an order affirming that Lizarazu voluntarily submitted to this court's jurisdiction; (2) an order affirming this court's personal jurisdiction; (3) a preliminary injunction enjoining Lizarazu from maintaining or prosecuting his Mexican cases or any other claims he may have against Sun World until the instant litigation, including appeals, is concluded; and (4) the issuance of a letter rogatory to the Mexican court notifying it of the injunction and requesting its cooperation in staying the Mexican cases.

## II. *Standard*

The Ninth Circuit does not apply a unitary test in determining whether or not a preliminary injunction should issue. Instead, the circuit requires that "a party show 'either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in its favor.'" *Briggs v. Sullivan,* 886 F.2d 1132, 1143 (9th Cir.1989) quoting *Hunt v. National Broadcasting Co.,* 872 F.2d 289, 293 (9th Cir.1989). A court is to bear in mind that these formulations "are really nothing more than descriptions of the two ends of a 'sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" *Id.* quoting *United States v. Odessa Union Warehouse Co-op,* 833 F.2d 172, 174 (9th Cir.1987). "In fact, if the balance of hardships sufficiently favors the moving party, a preliminary injunction may be awarded even though the questions raised are only 'serious enough to require litigation.'" *Id.* quoting *Arcamuzi v. Continental Air Lines,* 819 F.2d 935, 937 (9th Cir.1987).

The Ninth Circuit has also determined that a federal district court with jurisdiction over a party has the power to enjoin that party from proceeding with an action in the courts of a foreign country, although such power should be used sparingly. *Seattle Totems, etc. v. National Hockey League,* 652 F.2d 852, 855 (9th Cir.1981) *cert den. sub nom. Northwest Sports Enterprises, Ltd. v. Seattle Totems Hockey Club, Inc.,* 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1313 (1982). *See also, Philp v. Macri,* 261 F.2d 945, 947 (9th Cir.1958).

## III. *Should a Preliminary Injunction Issue?*

Sun World contends that under either Ninth Circuit test it is entitled to an injunction, i.e., the balance of hardships tips strongly in its favor and it will be irreparably injured if the injunction is not granted. Sun World points to several factors favoring the issuance of a preliminary injunction including, (1) that it is Lizarazu's strategy to proceed with the Mexican litigation and ignore the authority of this court; (2) that concurrently litigating this matter in this court and the Mexican court is duplicative; and (3) that allowing Lizarazu to proceed with the Mexican litigation will prejudice Sun World in that (a) by defending the Mexican suits Sun World will incur prohibitive costs; (b) the agreements at issue require the interpretation and application of California law of which the Mexican court lacks knowledge and familiarity; (c) it must provide complete discovery in the Mexican

litigation before discovery is completed in this litigation; and (d) inconsistent judgments may therefore result. Sun World asserts the foregoing demonstrates that the balance of hardships tips in its favor and that the combination of double costs and threat of inconsistent judgments constitute irreparable injury. *See, Cargill, Inc. v. Hartford Acc. & Indem. Co.,* 531 F.Supp. 710, 715 (D.Minn.1982) (recognizing that an injunction could be justified on grounds of unnecessary delay, substantial inconvenience and expense to parties and witnesses, or where separate adjudications could result in inconsistent rulings or a race to judgment). *Cf. United States v. Dorgan,* 413 F.Supp. 173, 175 (D.N.D.) *aff'd,* 429 U.S. 953, 97 S.Ct. 373, 50 L.Ed.2d 320 (1976).

Lizarazu acknowledges that this court has power to enjoin him from prosecuting the Mexican cases. However, he cautions that such power implicate issues of international comity and should be used sparingly because "such an order effectively restricts the jurisdiction of the court of a foreign sovereign." Quoting *China Trade and Development v. M.V. Choong Yong,* 837 F.2d 33, 35 (2d Cir.1987).

In *Seattle Totems, supra,* the most recent Ninth Circuit case which has dealt with the issue of enjoining a party from litigating in a foreign court, the owners of the Seattle Totems brought an antitrust action against the National Hockey League and the owners of the Vancouver Canucks alleging antitrust violations and seeking declaratory judgment that certain agreements were unenforceable. The Canuck-owners subsequently brought suit against the Totem-owners in Canadian court for damages for breach of the same agreements. The district court granted the Totem-owners' motion to enjoin the Canuck-owners from prosecuting its suit in Canadian court. After discussing several cases wherein federal district courts had enjoined a party from bringing an action in a foreign country, the Ninth Circuit determined that the district court did not abuse its discretion in issuing an injunction. *See, Bethell v. Peace,* 441 F.2d 495 (5th Cir. 1971); *In re Unterweser Reederei GmbH,*

428 F.2d 888 (5th Cir.1970) *aff'd on rehearing en banc,* 446 F.2d 907 (1971), *rev'd on other grounds sub nom. Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Gage v. Riverside Trust Co.,* 86 F. 984 (C.C.S.D.Cal.1898).

In reaching its determination the *Seattle Totems* court did not discuss the application of the threshold test that at least one district court has found necessary to address when faced with the question of possibly duplicative litigation, namely determining whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined. *See, Cargill, supra,* 531 F.Supp. at 715; *Medtronic, Inc. v. Catalyst Research Corp.,* 518 F.Supp. 946, 955 (D.Minn.1981) *aff'd,* 664 F.2d 660 (8th Cir. 1981). However, as such a requirement may nonetheless be implied from the *Seattle Totems* court's discussion, this court shall apply the test here.

Sun World asserts that the threshold requirements are met; Sun World and Lizarazu are parties to all lawsuits, and "the ultimate issues in the instant litigation and the Mexican Cases are virtually identical—the enforceability of the Marketing Agreements and the parties' rights and obligations pursuant to the proposed new contract. Disposition of the instant action will resolve the issues raised in the Mexican cases." Mtn. 13:24–14:1.

Lizarazu does not discuss the threshold test. Accordingly, the court finds that the threshold test has been met and the Mexican litigation is duplicative, as conceded by Lizarazu. Having made this determination the court now addresses the question of whether or not a preliminary injunction should issue.

◾ Both parties agree that in addition to showing either irreparable harm and a likelihood of success on the merits or a sharply tipped balance of hardships, the test to be applied in determining the propriety of issuing an injunction on these facts is that set forth by the *Unterweser* court and acknowledged by the Ninth Circuit in

*Seattle Totems.*[1] The *Unterweser* court determined that foreign litigation may be enjoined when it would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) where the proceedings prejudice other equitable considerations.

 Having carefully considered the arguments of both parties the court finds that the balance of hardships tip sharply in favor of Sun World and that under the *Unterweser* test, Sun World is entitled to a preliminary injunction.

Lizarazu contends that game-playing has occurred and strategic ploys have been implemented in this action. He argues that the timing of this motion demonstrates gamesmanship on the part of Sun World, and that laches should bar the issuance of a preliminary injunction.[2] The court agrees that ill-advised delay and ball-hiding strategies have been implemented in this action. However, the court is of the firm opinion that Lizarazu, not Sun World, is the party utilizing such methods.

Sun World has explained to the satisfaction of the court why this motion is not subject to a bar on laches grounds. Sun World has diligently attempted to work within the Mexican legal system to resolve the question of whether or not Mexican jurisdiction over this matter exists. It was only after the occurrence of intervening events, such as Lizarazu's failure to comply with the initial 90 day court-imposed discovery period, which evidenced Lizarazu's intent to proceed with the Mexican cases with all due speed while delaying the action in this court, that Sun World saw irreparable harm on the horizon and felt it advisable to seek a preliminary injunction. Indeed, as Lizarazu points out, the power to enjoin a foreign national from prosecuting a case in his country of origin is one that should be exercised sparingly. Thus, had Sun World brought this action at an earlier time as Lizarazu argues it should have, it is likely that the posture of the case would not have supported the issuance of an injunction.

Lizarazu would have the court believe that Sun World only seeks this injunction because it is unsatisfied with the Mexican court's initial ruling that it has jurisdiction. The court is satisfied, however, that this motion is not part of a grand scheme to get from this court the satisfaction which could

---

1. The court notes that in the parallel case of *Sun World v. Sergio Tapia Abascal, et al.* (CV-F-91-331-REC), it applied a combination of the *Unterweser* test and the test utilized by the district court in *Seattle Totems.* As explained in the order granting Sun World's motion for a preliminary injunction in that case, these tests overlap to some degree in that both require consideration of policy and possible prejudice to the parties. To the extent that the tests are dissimilar, they are nonetheless complementary in that both are concerned with protecting the interests of the parties and of the court. The parties here both invoke the *Unterweser* test. Accordingly, because the two tests require consideration of similar and complementary issues, the court's express application of the *Unterweser* test does not exclude consideration of the issues raised by the district court in *Seattle Totems.*

2. In a collateral argument, Lizarazu complains that it is because of Sun World that he has had to bear the costs of litigating in two forums. He asserts that it would be unfair at this date to negate the expenses he has incurred in the Mexican litigation. This argument is nonsense. Lizarazu brought the burden of double costs upon himself and Sun World by instituting the Mexican litigations on the heels of the filing of this action.

Lizarazu also contends that the first filing rule, which normally supports the issuance of a preliminary injunction as against a subsequently filed case in another federal forum, weighs against a preliminary injunction here because only five weeks elapsed between the filing of the U.S. and Mexican action. The court fails to see the reasoning behind, or applicability of, this argument. In any event, Lizarazu cites no authority for the proposition that the five week period would alter application of the first filing rule. As a matter of fact, the first filing rule has been applied even when the subsequently filed suit was begun one day after the first suit. *Martin v. Graybar Electric Co.,* 266 F.2d 202, 205 (7th Cir.1959) quoting *Crosley Corp. v. Westinghouse Elec. & Mfg. Co.,* 130 F.2d 474, 475 (3rd Cir.) *cert. den.,* 317 U.S. 681, 63 S.Ct. 202, 87 L.Ed. 546 (1942). Furthermore, insofar as Lizarazu implies that Sun World engaged in a race to the courthouse and is now attempting to win a race to judgment, the court would point out that there is no evidence to support this implication. Instead, the evidence demonstrates that Lizarazu, by filing a subsequent lawsuit, has created a race to judgment.

not be had in Mexico. As noted above, Sun World has attempted to work within the Mexican legal system. First, Sun World challenged the Mexican court's jurisdiction in Lizarazu's Mexican cases. When the trial court ruled that it had jurisdiction Sun World moved to stay the proceedings pending appeal. The Mexican court refused to rule on this request pending submission of official translations of the documents filed in this court. Such documents are currently being produced by Sun World in the context of discovery in the Mexican cases. Once the trial court has received and examined this court's documents it is possible that it will dismiss the Mexican cases. Robles Decl. para. 7–8. Obviously, Sun World is not attempting to circumvent the power of the Mexican court, or its policies and regulations. Unfortunately, however, this is exactly what Lizarazu appears to be attempting to do in this court.

As previously noted, Lizarazu submitted a document to this court which Sun World asserts is fraudulent. Following the hearing on this court's order to show cause why sanctions should not be imposed for filing a fraudulent document with the court, a 90 day discovery period was ordered. An evidentiary hearing was to follow directly thereafter. Lizarazu failed to respond to interrogatories and to appear for his deposition during the 90 day discovery period. He also attempted to release his counsel, without good cause, prior to the evidentiary hearing. Pursuant to Magistrate Beck's order compelling his appearance, Lizarazu finally appeared for his deposition, but only to indiscriminately [3] invoke his 5th Amendment right against self-incrimination.

Lizarazu's behavior clearly demonstrates his strategic ploy to delay the proceedings in this case while the Mexican cases approach final judgment with all due speed. His actions are vexatious, prejudicial to Sun World, and seriously impede the efficient administration of justice in this court. He has demonstrated his disrespect for this court's jurisdiction and its policies. These grounds, alone, are reason enough to support the issuance of a preliminary injunction; such behavior cannot be tolerated or rewarded with success. There are, however, other considerations which provide further support for a preliminary injunction.

Lizarazu argues that public policy weighs against the issuance of a preliminary injunction. He foresees that an injunction in this case would encourage foreign nationals subject to personal jurisdiction in the U.S. to sue American businesspeople doing business abroad upon the first sign of dispute or risk being enjoined by a U.S. court.

The court is utterly unpersuaded by this argument. Lizarazu speaks of public policy, but he disregards, again, the policies of this court. For example, the policy underlying FRCP 13 is to prevent a multiplicity of actions and to achieve a resolution via a single lawsuit. *Seattle Totems*, 652 F.2d at 854 citing *Southern Construction Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962). Although Lizarazu has technically complied with Rule 13(a) by filing a compulsory counter-claim, he has not complied with the policy of this rule insofar as he has opted to litigate his counter-claim in separate suits in Mexico. Furthermore, Lizarazu's contention that the issuance of a preliminary injunction here will *ipso facto* lead foreign nationals involved in business disputes with Americans to preemptively file suit in their country of origin is unfounded. An extreme and unusual set of facts exist in this case. This set of facts leads the court to conclude that a preliminary injunction is appropriate here, and also differentiates this case from the typical international business relationship wherein a preliminary injunction would not be appropriate.

Lizarazu also argues that the consideration of principles of international comity should lead this court to deny Sun World's motion. He asserts that this is particularly true where, as here, the foreign court has an interest in the case.

---

**3.** The court does not use the word indiscriminately without reason. For example, Lizarazu failed to verify his signature on documents submitted by him to the court and opposing counsel only days before.

This court does not dispute that the Mexican court may have an interest in the outcome of litigation which involves a Mexican citizen. There is also a possibility that Mexican law may somehow be implicated despite the statement in the marketing agreements that, "the execution, delivery and performance by Grower and Superior of this Agreement will not conflict with or violate the laws of the country of Mexico and no approval or instrumentality thereof is required in connection with the execution, delivery and performance of this Agreement." Nonetheless, such interests are overshadowed by the interest of this court in resolving a dispute concerning a contract entered into in this country by parties who agreed to have disputes relating thereto decided by a U.S. court applying California law.

This court recognizes the serious implications which necessarily accompany an order preliminarily enjoining a foreign national from prosecuting a case in his or her country of origin. As discussed, however, it is evident that the balance of hardships tips sharply in favor of Sun World and that under the *Unterweser* test the issuance of a preliminary injunction in this case is proper. The court is greatly concerned with, and disappointed by, the fact that the aforementioned reasons supporting the issuance of a preliminary injunction exist. The court is particularly distressed by Lizarazu's attempts to discount this court's jurisdiction and undermine its policies by implementing various strategies to delay the progression of this matter to final judgment. Such behavior will not be rewarded. Accordingly, Sun World's motion for a preliminary injunction is granted.

### IV. *Letter Rogatory*

Sun World anticipates that Lizarazu will not obey an injunction. Accordingly, it requests that this court address a letter rogatory to the Mexican court notifying it of the injunction and asking for its cooperation in staying the Mexican cases. In light of the court's decision to grant the preliminary injunction, Sun World's request is granted.

ACCORDINGLY, IT IS ORDERED that Sun World's motion for a preliminary injunction is granted; defendant Lizarazu is HEREBY PRELIMINARILY ENJOINED from continuing the prosecution of his presently pending Mexican cases against Sun World until the matter pending before this court has been brought to final judgment.

IT IS FURTHER ORDERED that Sun World shall immediately post a security bond with the court in the amount of $10,-000 pursuant to Rule 65(c). IT IS FURTHER ORDERED that Sun World shall fully prepare a letter rogatory for this court's signature.