**SUN WORLD, INC., Plaintiff,**

v.

**Gaspar LIZARAZU OLIVARRIA, Defendant.**

**No. CV–F–91–269–REC.**

United States District Court, E.D. California.

May 26, 1992.

Donald L. Morrow and Viveca Parker of Paul, Hastings, Janofsky & Walker, Costa Mesa, Cal.

Joseph Michael Marchini of Baker, Manock & Jensen, Fresno, Cal.

Barry Lee Goldner of Klein, Wegis, DeNatale, Hall, Goldner & Muir, Bakersfield, Cal.

Walter Whelan of McCormick, Barstow, Sheppard, Wayte & Carruth, Fresno, Cal.

OPINION RE: ORDER STRIKING DEFENDANT'S ANSWER, DISMISSING DEFENDANT'S COUNTERCLAIM, AND ENTERING DEFAULT JUDGMENT FOR PLAINTIFF

COYLE, Chief Judge.

On May 18, 1992, this court held an evidentiary hearing regarding defendant Gaspar Lizarazu Olivarria's (hereinafter "Lizarazu") alleged fraud on the court. Argument was also heard regarding plaintiff Sun World's request for the entry of default judgment as a sanction for the alleged fraud. The court now enters its opinion regarding its May 20, 1992, order striking Lizarazu's answer, dismissing his counterclaim, and entering default judgment for Sun World as set forth herein.

**386**

## I. *Background*

In 1986 and 1987 Sun World and Lizarazu entered into two contracts through which Sun World became the exclusive marketing agent for grapes grown by Lizarazu. In contemplation of a third agreement, characterized as a joint venture, Sun World advanced large sums of money and grapevines to Lizarazu. The joint venture was never signed. Lizarazu, however, failed to return the monies or grapevines that had been advanced to him. Sun World subsequently filed this suit on May 30, 1991, seeking restitution.

On June 14, 1991, Sun World filed an application for a right to attach order and seeking the issuance of a writ of attachment. Lizarazu opposed this application on July 8, 1991,[1] asserting,

> an arrangement was made to terminate the relationship between SUN WORLD and LIZARAZU. On or about February 28, 1991, Ahumada, on behalf of SUN WORLD, and LIZARAZU, entered into an agreement entitled "Notice of Termination." (Lizarazu Declaration, Exhibit "E".)[2] Under the Notice of Termination, there is a complete termination of the relationship between SUN WORLD and LIZARAZU. As a result of the termination, all claims were waived by SUN WORLD and by LIZARAZU. (Lizarazu Declaration 15:26–16:8.)

Opp. 12:25–13:5. In his opposition Lizarazu further argued,

> It should be noted as a threshold matter, that, in the Notice of Termination (Lizarazu Declaration, Exhibit "E"), the parties agreed to terminate the joint venture. Also as part of that Notice of Termination, the parties consented to a mutual release of all claims. This document was signed by both the Defendant,

and Michael Ahumada, a representative of Plaintiff. Accordingly, to the extent that this Court grants legal effect to this document, it clearly states on its face that Plaintiff has released Defendant from all claims relating to the joint venture. Thus, Plaintiff cannot now contend that it has any actionable claims arising out of the joint venture or that such claims would have "probably validity" for purposes of the issuance of a Writ of Attachment."

Opp. 24:20–25:4. In his declaration Lizarazu swears,

> After many discussions between myself and Ahumada concerning the relationship between SUN WORLD and myself, an arrangement was made to terminate the relationship between SUN WORLD, and myself. On or about February 28, 1991, Ahumada, on behalf of SUN WORLD, and myself, entered into an agreement entitled "Notice of Termination." A true and accurate copy of the Notice of Termination is attached to this Declaration and incorporated by reference as Exhibit "E." Under the Notice of Termination, there is a complete termination of the relationship between SUN WORLD, and myself. As a result of the termination, all claims were waived by SUN WORLD and myself.

Decl. 15:26–16:8.

The Notice of Termination purports to (1) establish that the proposed joint venture agreement was not consummated, but that Sun World would nonetheless forgive the monies advanced to Lizarazu; (2) terminate the 1986 and 1987 marketing agreements; (3) authorize Lizarazu to use Sun World's tradename "Superior Seedless;" and (4) mutually release both parties from all claims against the other.

---

1. Simultaneous with his opposition to Sun World's application Lizarazu filed suit against Sun World in Mexico seeking a declaratory judgment that the 1986 and 1987 marketing agreements are invalid and restitution for royalties paid and other damages. On July 9, 1991, he filed a second case against Sun World in Mexico seeking a declaratory judgment that the joint venture was breached and/or invalid and damages of no less than US $3,000,000. In connection with the latter case Lizarazu relies

on the same Notice of Termination submitted as Exhibit E in opposition to Sun World's application for the writ of attachment.

2. The Notice of Termination is referred to as Exhibit E, but is attached to Exhibit D in the court's file.

A copy of the Notice of Termination is attached to this order.

On July 30, 1991, this court determined that it had personal jurisdiction over Lizarazu and granted Sun World's application for a right to attach order and issued a writ of attachment. The court also ordered Lizarazu to show that the Notice of Termination was not a fraud and show cause why the sanction of default judgment should not be imposed.

In response to the court's order to show cause Lizarazu re-submitted the Notice of Termination and a second declaration wherein he swore,

On February 27, 1991, Ahumada presented me with the same Notice of Termination which had been presented to me in July, 1990. When Ahumada gave me the same Notice of Termination form, I became angry. I told him that I was tired of his lies and SUN WORLD's lies. I told him that I would call my attorney and that we would bring suit against SUN WORLD in Mexico. Ahumada told me to calm down and asked me what did I want in order to terminate the relationship. Ahumada told me to wait and not to call my attorney because he would like to get this matter completely resolved. Ahumada asked me what it would take to resolve the issues and problems between SUN WORLD and myself. I wrote out by hand the things that I would be willing to agree to. I wrote out the items that I wanted on a piece of yellow paper and gave the paper to Ahumada. At the end of my discussion with Ahumada on February 27, 1991, Ahumada left with the yellow sheet of paper that I had filled out by hand.

The next day, on February 28, 1991, Ahumada returned with the Notice of Termination with a new first page. Ahumada had the first page typed up to reflect the items which I had requested in my handwritten notes. I do not know how Ahumada had the first page prepared or where it was typed. When Ahumada brought me the Notice of Termination with the new first page, he also returned to me the handwritten notes which I had provided to him. Ahumada and I signed two originals of the Notice of Termination. I kept one original, and Ahuma-

da kept the other original. The Notice of Termination which I agreed to and which was prepared by Ahumada is attached to this Declaration as Exhibit "A."

It is my understanding that SUN WORLD has alleged that the Notice of Termination attached to this Declaration is a forgery. The document is not a forgery. I did not forge Ahumada's signature. I did not type up or have anyone else type up the first page. I gave my handwritten notes to Ahumada informing him of the items that I would be willing to agree to. He took those handwritten notes and brought back to me the Notice of Termination with a new first page.

Decl. 3:5–4:11.

Lizarazu filed his answer and counterclaim on August 26, 1991. Neither the answer nor the counterclaim expressly refer to the Notice of Termination. Nonetheless, his fourth affirmative defense evidences Lizarazu's intent to proceed with his Notice of Termination theory. This defense provides, "defendant alleges that plaintiff has intentionally relinquished and waived all rights it may have had to institute an action for the alleged wrongdoings complained of." Ans. 11:9–12. *See also* footnote 1, *supra.*

Lizarazu's sworn response to Sun World's interrogatory No. 61 further demonstrates his continued reliance on the Notice of Termination. No. 61 states, "[p]lease state precisely and completely the manner in which you contend Exhibit E to the Lizarazu Declaration was prepared including, without limitation, when, where, how, and by whom the document was prepared." Lizarazu's response, received by Sun World's counsel on October 2, 1991, provides,

Defendant objects to this Interrogatory as defendant has not fully completed his investigation of the facts relating to this case, and has not conducted any discovery in this action. Subject to and without waiving said objection, defendant responds as follows:

No discovery has been conducted, and LIZARAZU does not know, at this time, precisely "when, where, how, and by

whom the document was prepared." LIZARAZU is informed and believes that the document was prepared between February 27 and February 28, 1991, in or around Hermosillo, by Michael Ahumada or by someone hired and/or contacted by Ahumada.

Resp. to Interrog. 39:21–40:3. The response continues on to reiterate the same scenario set forth in Lizarazu's second declaration.

The hearing on the show cause order was held on November 25, 1991. In an order filed December 12, 1991, the court informed the parties that it would withhold a decision regarding Lizarazu's alleged fraud pending discovery. Accordingly, the court ordered the commencement of a 90 day discovery period and an evidentiary hearing at the conclusion thereof.

Sun World noticed Lizarazu's deposition for March 12, 1992, to be held at Lizarazu's choice of a variety of U.S. locations. March 30, 1992, Daucher Decl. Exhs. A and D. Lizarazu did not respond to the offer regarding the location of the deposition and failed to appear. Daucher Decl. 3:4–6; 3:22–28 and Exh. F. He gave no reason at the time for his failure to appear other than his unwillingness to travel outside of Hermosillo.[3] Daucher Decl. 3:25–28. Lizarazu thus failed to comply with the court-ordered discovery by failing to appear for his deposition. He compounded his disregard for the court's order by failing to timely respond to interrogatories propounded by Sun World during the discovery period. March 30, 1992, Parker Decl. 6:19–7:7 and Exh. G.

Also during this period Lizarazu submitted a substitution of counsel which, at first blush, appeared to be a stipulation signed by counsel for both parties. On March 5, 1992, the court signed the stipulation allowing Lizarazu to substitute in *pro se* for his counsel Klein, Wegis, DeNatale, Hall, Goldner & Muir and McCormick, Barstow, Sheppard, Wayte & Carruth. Sun World immediately objected to counsels' withdrawal. The court subsequently vacated the stipulation for failing to comply with Local Rule 182 and ordered counsel reinstated. Following the hearing on counsels' request to withdraw, the court, in an order dated April 10, 1992, denied leave to withdraw and expressed concern that such a request may have been "a tactical ploy designed to delay the U.S. litigation while the concurrent litigation occurring in Mexico progresses to judgment with all due speed." Order 11:23–25. The court was also concerned with the "possibility that Lizarazu may not have been informed by [counsel] of the possibility of this court entering a default judgment against him." Order 12:3–6.

On April 13, 1992, Magistrate Dennis Beck heard Sun World's motion seeking either sanctions for Lizarazu's failure to appear at his deposition, or an order that he appear for a deposition. Sun World also sought an order compelling responses to its interrogatories. On April 16, 1992, the magistrate issued an order compelling Lizarazu to appear for a deposition and testify regarding the circumstances surrounding the alleged forged document or show cause why his counterclaim should not be dismissed, his answer stricken, and default judgment entered against him. The magistrate also compelled Lizarazu to provide further responses to Sun World's interrogatories.

Lizarazu appeared for his deposition on April 24, 1992, and invoked his 5th Amendment right against self-incrimination in response to virtually every question posed of him.[4] Until this date, Lizarazu had never invoked his right against self-incrimination.

---

**3.** In his opposition to Sun World's motion for sanctions Lizarazu explained that he did not want to attend the deposition in the U.S. because of travel expenses and problems associated with being absent from his farm at that time of year. Opp. 3:22–27; Goldner Decl. 2:22–3:1.

**4.** Lizarazu's indiscriminate invocation of his 5th Amendment right is evidenced by the following colloquy regarding the responses to interrogatories which he served on Sun World just two days prior to the deposition:

MR. DAUCHER [for Sun World]: I'll ask the reporter to mark as Exhibit No. 9 a document that has seven pages, the first page of which is a telecopy cover sheet, the remainder of which appears to be a response to interrogatories ... Mr. Lizarazu, would you please look

On May 15, 1992, this court issued an order granting Sun World's motion for a preliminary injunction and expressing its distress at "Lizarazu's attempts to discount this court's jurisdiction and undermine its policies by implementing various strategies to delay the progression of this matter to final judgment." 804 F.Supp. 1264 (E.D.Cal.1992). Order 14:1–4.

The evidentiary hearing regarding the Notice of Termination was finally held on May 18, 1992. On that date the court was informed by counsel that Lizarazu conceded that the Notice of Termination was fraudulent. This concession necessarily reveals that Lizarazu perjured himself every time he gave his sworn account of the creation of the first page of the Notice.

## II. *Sanction of Dismissal and Default Judgment*

In *Combs v. Rockwell International Corp.*, 927 F.2d 486 (1991), *cert. denied* — U.S. ——, 112 S.Ct. 176, 116 L.Ed.2d 138, the Ninth Circuit determined that "dismissal is an appropriate sanction for falsifying a deposition. Fed.R.Civ.P. 11, as well as the court's inherent powers, can be called upon to redress such mendacity." *Id.* at 488. Accordingly, where, as here, a fraud has been committed upon the court, both Rule 11 and the inherent powers of the court support the sanction of dismissal and the entry of default judgment.

### A. Rule 11

A district court may impose the sanction of dismissal or default judgment pursuant to Rule 11. Rule 11 provides,

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney ... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best

of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact ... and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation ... If a pleading, motion or other paper is signed in violation of this rule, the court ... *shall* impose upon the person who signed it, a represented party, or both, *an appropriate sanction* ...

(Emphasis added).

Application of Rule 11 to these facts is exceedingly simple. Lizarazu admittedly and intentionally defrauded the court by filing the Notice of Termination. He also committed perjury in at least two instances in furtherance of that fraud. Consequently, to say that the Notice of Termination and the two perjured documents were not well grounded in fact is a gross understatement.

This fraud, as any fraud, was perpetuated for an improper purpose. Here that improper purpose included, *inter alia,* an attempt to wrongfully deny Sun World a writ of attachment and to implement a strategic ploy of causing unnecessary delay in this litigation. Furthermore, if the fraudulent document not been called into question, the court does not doubt that Lizarazu would have attempted to use it, an integral document, to obtain favorable judgment on Sun World's complaint.

■ At the evidentiary hearing counsel argued that because no court order had been violated the lesser sanction of only dismissing Lizarazu's counterclaim would be appropriate. The ability to impose the sanction of dismissal and default judgment does not depend upon whether or not a court order has been violated. As noted by the court at the time, it need not order Lizarazu to refrain from submitting false

---

at the third to the last page. At line 12, does that appear to be a copy of your signature? MR. COOPER [for Lizarazu]: I would advise the witness not to—strike that. I would advise the witness to exercise his Fifth Amendment privilege and refuse to answer the question.

BY MR. DAUCHER: Based upon the advice of your counsel and the assertion of whatever rights you may have under the Fifth Amendment of the Constitution of the United States, do you refuse to answer that question?
A: Yes.
Dep. 46:17–47:11.

documents or perjuring himself in order for those acts to be punishable by dismissal and the entry of default judgment. The legal obligation to refrain from committing such acts is imposed upon every party to a lawsuit.

■ As discussed in more detail *infra*, the court finds that the only appropriate sanction is the striking of Lizarazu's answer, the dismissal of his counterclaim and the entry of default judgment against him on Sun World's complaint. Lizarazu's egregious conduct, his lack of repentance and his obvious disregard for this court's authority force the conclusion that no other sanction would be efficacious. Accordingly, pursuant to Rule 11, the court hereby strikes Lizarazu's answer, dismisses his counterclaim, orders the entry of default judgment for Sun World, and orders Lizarazu to pay all costs and attorney's fees incurred by Sun World resulting from and relating to the fraudulent document.

### B. Inherent Power of the Court

■ The court may impose the sanction of dismissal or default judgment pursuant to its inherent powers. "The inherent powers of federal courts are those which 'are necessary to the exercise of all others,'" and include "the 'well-acknowledged' inherent power ... to levy sanctions in response to abusive litigation practices." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (quoting *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812). In the Ninth Circuit "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334 (9th Cir.1985) (quoting *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir.1983)). Dismissal under the court's inherent powers is justified in extreme circumstances, *Wyle*, 709 F.2d at 589, in response to abusive litigation practices, *Fjelstad*, 762 F.2d at 1338, and to insure the orderly administration of justice and the integrity of the court's orders, *United States v. National Medical Enters, Inc.*, 792 F.2d 906, 910 (9th Cir.1986); *Thompson v. Housing Authority of the City of Los Angeles*, 782 F.2d 829, 831 (9th Cir.1986), *cert. denied* 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60. In dismissing a case pursuant to its inherent powers a court must determine,

> (1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser sanctions, (4) the relationship or nexus between the misconduct drawing the dismissal sanction and the matters in controversy in the case, and finally, as optional considerations where appropriate, (5) the prejudice to the party victim of the misconduct, and (6) the government interests at stake.

*Halaco Engineering Co. v. Costle*, 843 F.2d 376, 380 (9th Cir.1988).

■ There can be no doubt that extreme circumstances exist in this case. Lizarazu has admitted to having committed a fraud on the court by submitting a document which, if genuine, would have directed the outcome of this litigation. In the furtherance of this fraud he perjured himself on at least two occasions. Lizarazu's behaviour has been reprehensible. He has mocked the authority of this court and scorned its rules. His mendacity has needlessly delayed this case for the purpose of furthering his strategic objectives. He has toyed with this court, interfering with its ability to promote the efficient administration of justice and causing the needless expenditure of precious and finite judicial resources. There is no sign of repentance or any indication that this pattern of behaviour would cease if this case were allowed to proceed. As a matter of fact, when questioned at the evidentiary hearing about Lizarazu's compliance with this court's preliminary injunction, counsel was forced to admit that he had no idea if Lizarazu would comply. If counsel cannot give the court the simple reassurance that Lizarazu will abide by the court's preliminary injunction,

The court must presume that compliance will not be forthcoming.[5]

the court must presume that compliance will not be forthcoming.[5]

Counsel has suggested the lesser sanction of simply dismissing Lizarazu's counterclaim. In another case such a sanction might be appropriate. However, given Lizarazu's track record before this court and his apparent intent to disregard the preliminary injunction and proceed with the Mexican cases (cases which rely on the same theories as those set forth in his counterclaim as well as on the admitted forged document[6]) the court is compelled to conclude that any sanction other than the striking of his answer, the dismissal of his counterclaim and the entry of default judgment against him on Sun World's complaint would be an exercise in futility and operate as an ill-gotten reward for his despicable behaviour.

Counsel has argued that the fraudulent document does not go to the heart of this case and therefore does not support the harsh sanction of dismissal and default judgment. In so arguing counsel conveniently ignores that if this court had accepted the fraudulent document as valid Sun World's application for a writ of attachment would have been denied. More importantly, because the fraudulent document purported to release both parties from all potential claims against one another, Lizarazu would been entitled to judgment on Sun World's complaint. The court is hard put to think of any document which could be more firmly connected to the merits of this case than this one; if accepted as genuine it would have disposed of Sun World's case in one fell swoop.

There is no doubt that Sun World has been prejudiced by Lizarazu's actions. It has been forced to litigate against an opponent who admittedly and intentionally committed a fraud on this court, who has perjured himself on at least two occasions, who has exercised delay tactics, who has shown complete disregard for the jurisdiction of this court, and who has instigated duplicative, concurrent litigation in Mexico.

Lizarazu was told that the sanction of dismissal and default judgment may be imposed on at least three occasions.[7] He cannot now be heard to say that he was not warned.

Accordingly, based on the foregoing discussion and the unshakable belief that the only efficacious sanction available is that of dismissal and the entry of default judgment, this court hereby exercises its inherent power and strikes Lizarazu's answer, dismisses his counterclaim, orders the entry of default judgment against him on Sun World's complaint, and orders Lizarazu to pay all costs and attorney's fees incurred by Sun World resulting from and relating to the fraudulent document.

**5.** It should be noted at this point that Lizarazu failed to appear for the evidentiary hearing or submit any statement regarding the forged document, his perjuries, or his compliance with the preliminary injunction.

**6.** The court notes that although Lizarazu has admitted that the Notice of Termination was fraudulent, he has not represented that he intends to withdraw his reliance on this document with regard to his Mexican litigation. The court finds Lizarazu's apparent intent to continue to rely on an admittedly fraudulent document in the Mexican litigation incredible. It is blatant evidence of his strategy to frustrate this court's jurisdiction with delay tactics while simultaneously working to obtain judgment against Sun World in the Mexican court.

**7.** See, July 30, 1991, Order to Show Cause ("Defendant and his counsel are also ordered to show cause why sanctions, including the sanction of default judgment should not be imposed on either or both of them if the court determines that the document at issue is a forgery." 1:19–23); April 10, 1992, Order re: Defense Counsels' Motion for Leave to Withdraw ("This court is also concerned that Lizarazu may not have been informed by [counsel] of the possibility of this court entering a default judgment against him in the event that he fails to appear at the evidentiary hearing." 12:2–6); and Magistrate Beck's April 17, 1992, Order on Plaintiff and Counter Defendant Sun World's Motion for Sanctions and for Order Compelling Deposition and Further Answers to Interrogatories ("The court specifically cautions Defendant Lizarazu that sanctions, including the sanction of dismissal of his counter claim, striking of his answer and entry of his default on Sun World's complaint will be imposed for his failure to appear at the deposition as ordered." 4:20–5:1).

The court is also aware of additional occasions during various hearings when counsel was warned of the possibility of such a sanction.

ACCORDINGLY, IT IS ORDERED that Gaspar Lizarazu Olivarria's answer is stricken and his counterclaim dismissed. IT IS FURTHER ORDERED that default judgment is hereby entered against Gaspar Lizarazu Olivarria on Sun World's complaint. IT IS FURTHER ORDERED that Gaspar Lizarazu Olivarria shall pay Sun World's attorney's fees and costs incurred in connection with the fraudulent document. Sun World is to set the matter for hearing regarding damages and attorney's fees.

JUDGMENT TO BE ENTERED.

## NOTICE OF TERMINATION

This NOTICE OF TERMINATION embodies the entire understanding of the terms and conditions of the termination of the Agreement, evidenced by a Letter of Intent dated February 17, 1989, by and between Superior Farming Company, a Delaware corporation, acquired by Sun World, Inc., a Delaware corporation, as succesor by mergers on December 12, 1989, hereinafter referred to as "Sun World", and Gaspar Lizarazu Olivarria, hereinafter referred to as "Lizarazu".

NOW, THEREFORE, THE PARTIES AGREE AS FOLLOWS:

"Sun World" herein fully accepts that they have not complied with the terms or conditions specified in the "Letter of Intention" signed with "Lizarazu" on February 17 of 1989. They also accept and confirm that various promises mentioned verbally to same "Lizarazu" regarding the incorporation of a legal contract (a so called Joint Venture) to plant in Lizarazu's Sonora plantation the equivalent of 1000 (one thousand) hectares of table grapes and "Sun World" also accepts that "Lizarazu" fully and formally complied with the contents of the mentioned letter of intention dated February 17, 1989 with Marketing Agreement of May 17, 1986 and February 20th of 1987.

It is also important in view of these circunstances to mention herein that "Sun-World" has undoubtedly caused "Lizarazu" considerable damages and great expenses and should be willing to accept unconditionally that the amount of $316,450.00 Dollars registered in their Books as a debt should be totally cancelled as part payment for the damages suffered by "Lizarazu" by "Sun World" as succesors of the rights of Superior Farming Company.

"Sun World" also herein accepts that the previously signed "Growing and Marketing Agreement" for certain grape varietes dated February 20, 1987 and May 17, 1986, which agreement refers to Sun-World grape varieties of course will not remain in effect as per conclussion or termination of aforegoing terms and consecuently "Sun-World" relinquishes to any signed contracts or agreement among other parties.

The aforgoing effect should leave "Lizarazu" free to deal with his product (grapes) with whatever client he choses in the future and using his own trade name cartons, labels or promotional materials including the label "Superior Seedless", etc.

"Sun-World" offers "Lizarazu" its services as an agent in his grape production and Sun-World will charge as fees or comision an amount of not over 3% over the total sales value.

In conclusion, both parties declare and agree that they do not have any claims among them derived from previous or present contracts dated since May 17, 1986 and February 20th, 1987 and the letter of Intention of February 17, 1989 and both parties declare this as final settlement of their mutual business arrangements.

This written notice shall supersede all previous communications, representations or undertakings, either verbal or written and therefore upon acceptance, terminates the aforesaid Agreement entered into on February 17, 1989, between the parties relating to the subject matter hereof. This document may only be amended by a written instrument signed by both parties hereto.

In order to signify your acceptance of the foregoing, it is necessary that you sign and return one copy of this Notice of Termination to Sun World. The second Copy may be retained for your records.

SUN WORLD

By: [Signature]

NOTICE OF TERMINATION—Continued

Date: 2/28/91

GASPAR LIZARAZU OLIVARRIA

By: [Signature]

Date: 2/28/91