**Carol J. POPE, Plaintiff,**

v.

**FEDERAL EXPRESS CORP., et al., Defendants.**

**No. 88–1245–CV–W–1.**

United States District Court, W.D. Missouri, W.D.

June 1, 1990.

Gwen G. Caranchini, Kansas City, Mo., for plaintiff.

John M. Lilla, Kansas City, Mo., for defendants.

## ORDER

WHIPPLE, District Judge.

Plaintiff has alleged sexual harassment, in violation of 42 U.S.C. § 2000e, against her former employer and against Danny R. Collins, her supervisor at Federal Express Corp. Defendants filed a motion on March 6, 1990, for a stay of further proceedings and for sanctions, including dismissal. Also on March 6, 1990, plaintiff filed a motion for recusal. Plaintiff filed on March 19, 1990, her opposition to the motion for sanctions. Also on March 19, 1990, plaintiff filed a request for a ruling on the motion to recuse.

The court received evidence on the motion for sanctions in a hearing on March 30, April 4 and April 5, 1990. At the beginning of the hearing, the motion for recusal was denied. At the conclusion of the hearing, the court ruled that the motion would be granted, sanctions would be imposed, and the claims would be dismissed with prejudice.

Upon request of the court, defendants submitted on April 16, 1990, proposed find-

ings of fact and conclusions of law. Plaintiff filed a response to the proposals and, on May 2, 1990, defendants replied to the response. The findings and conclusions below are drawn from the proposals, and are intended to memorialize and elaborate upon the ruling issued from the bench on April 5, 1990.

## I. The Motion

Defendants requested sanctions, pursuant to Rules 11, 16(f), 26(b)(1), 26(g), 37(b) and 41(b), Fed.R.Civ.P., including dismissal of the complaint and including an award of attorneys' fees and costs. Essentially defendants contended that a critical document was manufactured by plaintiff, or at her direction or with her knowledge. Defendants contended that a knowing attempt to rely upon and perpetrate such a false document constituted bad-faith litigation which justified dismissal of the lawsuit and awarding fees and costs.

Specifically, the document (identified as Exhibit 203) is a photocopy of a document that contained what appeared to be a handwritten note:

Carol,

*you* "feel" good!

Danny

Those five words, including the peculiar pattern of underscoring and the quotation marks, appeared on the lower half of a page at a slight angle which did not align with the computer-generated numbers and text which were printed on the top third of the page. Defendants contended that plaintiff had produced that document during discovery and advanced it as one upon which defendant Danny Collins had written, before leaving it on plaintiff's desk in the summer of 1987.

Plaintiff responded essentially that she did not manufacture the document. She further asserted that no direct evidence exists to show she manufactured the document and that, even if such evidence existed, her claims should not be dismissed. Plaintiff asserted that her right to a jury trial should not be denied by way of Rule 11 sanctions.

## II. Findings of Fact

The evidence adduced at the hearing concerned the development of the discovery process in this litigation. Exhibits numbered FEL 42 and 124 are multiple-paged documents containing copies of a Federal Express document called a "Coaching Checklist." The checklist was prepared by Collins about January 15, 1987, for Jeff Goff, a Federal Express employee. The coaching checklist was prepared in the ordinary course of Federal Express business as part of an evaluation of Goff's performance. In exhibit FEL 42, which was produced by Federal Express's Memphis office, the checklist is page 22. In Exhibit 124, produced by the Federal Express's Overland Park office, the checklist is page 35. Copies of exhibits FEL 42 and 124 were produced to plaintiff about June 9, 1989.

Both copies of the checklist include defendant Collins' handwriting on a form which Federal Express used regularly in conducting performance evaluations upon sales personnel. Collins' penmanship appears after the printed words "Agreed upon actions:" as follows:

Agreed upon actions: <u>you have</u> a good

<u>"feel"　　with　　people</u>　—use this

<u>to　　your　　sales　　advantage</u> & take charge.

The underlined words in the document in question (Ex. 203) also were underlined in the checklist, which is a pre-printed with block-paragraph underlining. The handwritten text in the checklist was written partially on the lines, as indicated above.

Exhibit 203(a) is a letter dated September 27, 1989, and mailed that day by plaintiff's counsel to defendants' counsel. Attached to the letter was an alleged facsimile of Exhibit 203. The letter says that the document (Ex. 203) surfaced while plaintiff and her counsel were preparing a motion. Exhibit D–132 is a copy of a letter, dated September 29, 1989, from plaintiff's counsel to defendants' counsel. The letter indicates plaintiff's intention to seek punitive damages in connection with Exhibit 203.

Plaintiff's deposition originally had been taken on July 26, 1989, at which time she repeatedly stated she did not have any documents which would substantiate her allegations of sexual harassment by defendant Collins. After plaintiff's counsel mailed Exhibit 203 to defendants' attorneys with a letter dated September 27, 1989, defendants further deposed plaintiff on October 12, 1989.

Defendants' Exhibit 3 is a transcript of plaintiff's supplemental deposition, given under oath on October 12, 1989. In the deposition, plaintiff said Exhibit 203 is a photocopy she made about June 1987 of a document she found lying on her desk about that time. She testified that the message on the document she had photocopied had been written by a human being with some sort of writing instrument, rather than being photocopied. She further said in the deposition that the top part of the document was a photocopy of a computer printout, but that the handwritten message was original writing which she believed had been written by Collins on the copy of the computer printout shortly before she found it on her desk. She also testified that, after photocopying what she had found on her desk, she lost, misplaced or discarded the actual paper she had found on her desk. She said in the deposition that, in addition to the handwritten message, the paper on her desk had her own handwritten notations at the top where the photocopied computer-printed information was.

Plaintiff also testified in her deposition that, after making the photocopy of the paper she found on her desk, she folded the photocopy (which became Ex. 203) and inserted it in a notebook. She further said in the deposition (and in her testimony at the hearing) that she had forgotten about the document (Ex. 203) until she found it in her home about September 26, 1989. She testified at the hearing that, upon finding Exhibit 203, she put it in a facsimile machine to send a copy to her attorney.[1]

Later in the supplemental deposition, plaintiff was presented by defense counsel with a transparency of Exhibit 203. She was invited to compare it to the words on the "Coaching Checklist." Plaintiff and her attorney denied that Exhibit 203 was manufactured. She denied that she had manufactured it, and denied knowledge of anyone else having manufactured Exhibit 203. At the hearing on the motion, however, plaintiff's counsel acknowledged that Exhibit 203 had been manufactured, or was a photocopy of a manufactured document.

Charles Scott, a member of the federal bar, is an expert document examiner. His qualifications as an expert appear in his biographical sketch (Def. Ex. 1). Scott testified at the motion hearing that Exhibit 203 could never have contained the critical message in original handwritten form. Rather, he testified, the message was a photocopy of a "cut-and-paste" job. The handwritten words "you", "good" and "feel", including the underlining, had been cut from a copy of the Jeff Goff coaching checklist, he testified. The words then were arranged on a page to form an apparently handwritten message.

Scott demonstrated the basis for his findings by way of enlargements and transparencies which were laid over one another to show conclusively that the message was created from the handwriting on the coaching checklist. For instance, the checklist has a colon after the printed word "actions," and that colon was transferred on the immediate left of the word "you" from the checklist to the document from which Exhibit 203 was copied. Exhibits[2] A, B, C, D, 7, 7A, 7B, 7C, 8A, 8B, 8C, 9, 9A, 10, 11, 11A, 12, 12A, 12B, 13, 13A, 2, 3, 3A, 4, 4A, 5 and 5A were photocopies, transparent overlays, prints and enlargements created by Scott during his examination of Exhibit 203 and Exhibits FEL 42 and 124.

---

**1.** At the hearing on the motion, plaintiff testified that she made a photocopy of Ex. 203 and put that photocopy, rather than Ex. 203, into the facsimile machine to send to her attorney.

**2.** The exhibits previously were used in a deposition, where identification numbers and letters were assigned. They are cited on the hearing exhibit list as "Depo. Ex. ___".

The demonstration established that the message on Exhibit 203 was created by cutting the handwritten words "you", "'feel'" and "good" from a copy of the coaching checklist and affixing the words to form a new, and seemingly handwritten, message. Therefore, as Scott testified, no original writing of the message ("Carol, you 'feel' good! Danny") ever existed.

Scott further testified that when he received Exhibit 203 (i.e., the actual photocopy which plaintiff claimed to have made from the document she said she found in June 1987), it was in substantially worse condition than it would have been if it were the document she sent by facsimile machine to her attorney in September 1989. Scott explained that neither a photocopier nor a facsimile machine can create a more complete and better copy than the document from which the facsimile or photocopy is made.

Scott showed where letters on the photocopy of the handwritten portion of Exhibit 203 had been rubbed or otherwise broken. Some areas of rubbing or broken lines occurred in the same areas as the folds on Exhibit 203. However, the lines did not match with previously made copies of the exhibit. The fair inference from the testimony was that, contrary to plaintiff's assertions, Exhibit 203 had not been folded for an extended period prior to being used to make a photocopy which was sent by facsimile machine to her attorney. Plaintiff also had inconsistently claimed that Exhibit 203 itself (rather than a photocopy of it) was put in the facsimile machine to send to her lawyer but, even if that were the case, the inference still is that the document was not folded as represented.

When she gave her supplemental deposition on October 12, 1989, plaintiff knew that the message ("Carol, you 'feel' good! Danny") was not an originally handwritten message from Collins on the document from which Exhibit 203 was a photocopy. Consequently, no such originally handwritten message could have been found on plaintiff's desk as she contended in her deposition. Furthermore, she could not have removed an originally handwritten message from her desk, and then rediscovered it in her notebook, because no such original message existed. When she gave the deposition, plaintiff knew Exhibit 203 was a manufactured document which was not what it purported to be.

When plaintiff filed her motion on September 29, 1989, for sanctions pursuant to Rule 11, she relied upon the manufactured document. The motion sought sanctions against defendants on the grounds that defendants knew the document existed but, in regard to discovery requests, defendants failed to produce it or to respond truthfully about it. Even though plaintiff's motion was withdrawn later, she knew it was not well-grounded in fact and it relied on untrue allegations when the motion was filed.

On October 12, 1989, plaintiff signed under oath and served her responses to defendants' opening interrogatories. The interrogatories pertained to plaintiff's allegations regarding Exhibit 203. Plaintiff's interrogatory answers alleged she had received the original of Exhibit 203 in June of 1987. Interrogatory answer number one states:

(a) ... The document was printed at one of my reporting stations and put on my desk in the later afternoon.

(b) I retained possession of the document until locating it in my calendar book which I kept in a closet at home. Now my attorney has possession of it.

Plaintiff's answer to interrogatory number two, which sought additional information regarding the document plaintiff allegedly had found in June 1987, is:

(a) I know of no person who may have seen it, but anyone at the Hickman Mills location could have seen it as it was placed on my desk. I don't know how long it was on my desk between the time Danny Collins left it there and the time I picked it up.

At the time plaintiff signed these answers to defendants' interrogatories, on October 12, 1989, she knew they were not true.

On October 13, 1989, plaintiff filed her response to defendants's supplemental request for production of documents pertaining to Exhibit 203. In response to requests

from defendants for the "original" of the document, copy of which was attached to plaintiff's Rule 11 motion, and for the "actual document" which plaintiff claimed to have received from defendant Collins, plaintiff responded: "Has been produced." When she served her response to defendants' supplemental request for production of documents, plaintiff knew the produced document was not the "original" document of which the document attached to plaintiff's Rule 11 motion was a photocopy. Furthermore, when she served her response, plaintiff knew that the document produced for defendants (Exhibit 203) had not been received by her from Collins.

On December 5, 1989, plaintiff filed her first amended designation of expert and designation of events giving rise to her allegation of Title VII violations. In that filing she reasserted her allegation that the original Exhibit 203 had been created by defendant Collins. When she filed that first amended designation, she knew this statement—which was included in it—was false:

> n. In June or July of 1987 Collins left a note on Pope's desk which stated in his handwriting "Carol, You feel good! (signed) Danny" ...

When she filed that first amended designation, she knew this statement contained within it was misleading in that she knew the plaintiff's access to documents, or lack thereof, was immaterial and she knew that Exhibit 203 was not what she claimed it to be:

> bb. Collins and FED EX attempt to characterize the "feel good" document as a document manufactured by Pope when there is no evidence Pope had any access to any document from which it could have been manufactured or that it was manufactured by her.

On March 19, 1990, plaintiff filed her second amended designation of expert and designation of events giving rise to allegations of Title VII violations, in which plaintiff reasserted the same allegations set forth in paragraphs n. and bb. as quoted above. Paragraph n. from the first amended designation also was identified as paragraph n. of the second amended designation. Paragraph bb. from the first amended designation was identified as paragraph dd. in the second amended designation. During the hearing on the motion, plaintiff's counsel testified that she did not subjectively believe the allegation set forth in this pleading, however, that was her client's contention and she felt she had to do what her client wanted to do.

When she filed her second amended designation, plaintiff knew the statement in paragraph n. was false. Also at that time, she knew the statement in paragraph dd. was misleading in that plaintiff's access to documents, or lack thereof, was immaterial and plaintiff knew that Exhibit 203 was not what she claimed it to be.

During her hearing testimony in response to defense counsel's inquiry, plaintiff was evasive, hesitant, talked in generalities, qualified her answers, was argumentative, and frequently looked to her attorney before she would answer. She also repeatedly refused to explain what she meant by "original" and she denied that she could tell the difference between an "original" and a photocopy. Her demeanor during interrogation by defense counsel was in sharp contrast to the manner in which she testified at her deposition before being confronted with the coaching checklist, and on cross-examination by her own counsel at the hearing. During the first part of the deposition, and under cross-examination by her own counsel at the hearing, she apparently had no difficulty understanding questions, and she answered them directly and precisely without qualifying her answers.

Upon reviewing the deposition transcript which is in evidence, and observing the plaintiff during her testimony at the hearing, the court finds that plaintiff's testimony is not credible and she is an unreliable witness. Upon considering Scott's expert testimony, the related exhibits, the circumstances proved at the hearing, and the reasonable inferences to be drawn therefrom, the court finds that Exhibit 203 is a manufactured document. The document is not what plaintiff has purported it to be, that

is, a handwritten message from Collins to plaintiff which says "Carol, you feel good! Danny." Furthermore, before plaintiff produced the document and attempted to advance it on her behalf, she knew it was a manufactured document which was not what she purported it to be. Despite that knowledge, plaintiff repeatedly represented the document to be something which it was not. Defendants adduced clear and convincing evidence to support these findings.

### III. Conclusions of Law

#### A. *Rule 11*

 When plaintiff testified repeatedly at her supplemental deposition on October 12, 1989 that she had received the original note on her desk, and that she was definite that the note had original writing, written on paper with some type or writing instrument by a human being, she was testifying falsely because an original document as she described never existed. It was and is impossible for such an original document to exist. The court has examined Exhibit 203 and the transparent plastic overlays made from it. The court has positioned each word of the you "feel" good! statement from the transparent overlay on each corresponding word of Defendants Exhibits FEL 42 and FEL 124. The court has observed that the words match perfectly; even better than if they had been traced. One need not be an expert to see that he you "feel" good! statement was manufactured from a copy of either of Defendants Exhibits FEL 42 or 124, then was pasted on a copy of the sales goal document, and a photocopy was made.

Plaintiff's attorney had the same opportunity to make such examination on October 12, 1989, and thereafter. Plaintiff's attorney hearing plaintiff testify at that deposition that she had the original document on the date she claimed it was placed on her desk. At that time, plaintiff's attorney was put on notice that her client was testifying falsely. If plaintiff's attorney had any doubts that Exhibit 203 was manufactured she should have had it examined and compared to Defendants's Exhibits FEL 42 and FEL 124. Plaintiff's attorney saw in the deposition how defense counsel had examined and compared Exhibit 203 with the other exhibits, so plaintiff's counsel easily could have commissioned a separate test to verify the contention of fabricated evidence. An independent test would have satisfied plaintiff's counsel whether it an original writing ever could have existed, or it was a cut-and-paste job such that an original never could have existed. Upon making a finding that the evidence was manufactured, plaintiff's attorney had an ethical responsibility to stop relying on Exhibit 203 as evidence in plaintiff's case.

Missouri Supreme Court Rule 3.1 on Professional Conduct provides:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law...."

Rule 11, Fed.R.Civ.P., provides:

> * * * The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signor's knowledge, information and belief formed after *reasonable inquiry it is well grounded in fact* ...

Plaintiff's answers to interrogatories, her responses to requests for production, her motion for sanctions against defendants, her first and second amended designations of experts and of events giving rise to allegations of Title VII violations, and her supplemental deposition testimony on October 12, 1989, all constituted violations of Rule 11. Those pleadings were certified by plaintiff, or her counsel on her behalf, when plaintiff knew the pleadings were not well-grounded in fact. By relying upon Exhibit 203, when plaintiff knew it was false, she was interposing those pleadings for improper purposes, including harassment and a needless increase in litigation costs.

The findings herein lead the court to conclude overwhelmingly that plaintiff violated Rule 11. Furthermore, the inescapable conclusion must be that plaintiff's at-

torney was in violation of Rule 11 from and after October 12, 1989.

The Notes of the Advisory Committee following Rule 11 indicate that the rule is fully intended to permit the court to award expenses and attorney fees to a party "whose opponent acts in bad faith in instituting or conducting litigation", citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) and *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973). Other case authority for imposition of Rule 11 sanctions under these circumstances include *Bower v. Weisman*, 674 F.Supp. 109, 112 (S.D.N.Y.1987) (plaintiff's perjured deposition testimony brought the deposition within the ambit of Rule 11), and *Hilgeford v. Peoples Bank, Inc.*, 113 F.R.D. 161, 164 (N.D.Ind.1986) (dismissal with prejudice under Rule 11 appropriate where plaintiff's claims were based on "twisted and self-manufactured facts").

The Eighth Circuit has held that Rule 11 is "intended to be vigorously applied by district courts to curb widely acknowledged abuse resulting from the filing of frivolous pleadings and other papers." *Adduono v. World Hockey Assn.*, 824 F.2d 617, 621 (8th Cir.1987). The pleadings filed by plaintiff in this case, as aforementioned, were not only frivolous but were known by plaintiff to contain false statements.

■ Once a violation of Rule 11 is established, imposition of sanctions by the court is mandatory. *Wise v. Pea Ridge School District No. 109*, 675 F.Supp. 1524, 1533 (W.D.Ark.1987), *aff'd*, 855 F.2d 560 (8th Cir.1988). Under these circumstances, and in light of the findings of fact set forth above, the court finds that defendants are entitled to sanctions against plaintiff and plaintiff's attorney pursuant to Rule 11, Fed.R.Civ.P.

### B. *Rule 26(g)*

■ Because plaintiff certified her discovery responses even though they were not made in good faith, and they were interposed for improper purpose (as more fully set forth above), the court finds that plaintiff violated the provisions of Rules 26(g).

The Advisory Committee Note to the 1983 amendment to Rule 26(g) provides that the rule "is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." The note also says:

\* \* \* \* \* \*

Rule 26(g) makes explicit the authority judges now have to impose appropriate sanctions and requires them to use it. This authority derives from Rule 37, 28 U.S.C. § 1927, and the court's inherent power.

\* \* \* \* \* \*

(citations omitted).

Rule 26(g) provides that, upon violation, the court shall impose the appropriate sanction, including reasonable expenses and attorney fees incurred because of the violation. The Notes of the Advisory Committee following Rule 26(g) specifically point out that the rule is intended to encompass responses to production requests, such as the case here with production by plaintiff of Exhibit 203. The sanctions imposed here under Rule 26(g) arise also from plaintiff's other discovery responses, as described more specifically above.

### C. *Rule 41(b)*

■ Because of plaintiff's failure to comply with the Federal Rules of Civil Procedure, as determined above, the court finds that plaintiff's amended complaint should be dismissed involuntarily with prejudice pursuant to Rule 41(b). Dishonest conduct by a party has been recognized as grounds for dismissal with prejudice under Rule 41(b). *C.B.H. Resources, Inc. v. Mars Forging Co.*, 98 F.R.D. 564, 569 (W.D.Pa. 1983) (use of bogus subpoena to secure attendance of witness). Dismissal under Rule 41(b) has been held appropriate where plaintiff has engaged in bad faith or egregious conduct, or where plaintiff's conduct threatens the very integrity of the judicial process. *Kersh v. Borden Chemical Div. of Borden Inc.*, 121 F.R.D. 55, 56 (E.D.Mich.1988), *later proceeding*, 689 F.Supp. 1457 (E.D.Mich.1988).

### D. *Inherent Power to Impose Sanctions*

 In addition to the aforementioned rules as a basis for imposition of sanctions, the court retains its inherent equitable power to impose these sanctions. The sanctions may include an award of attorney fees to an opposing party, where a party has engaged in bad faith or abusive practices in conducting litigation. *Hall v. Cole, supra,* at 4–5, 93 S.Ct. at 1945–46; *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 258–259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). The specific sanction of dismissal has been recognized as appropriate in response to abusive litigation practices, pursuant to the court's inherent power to levy sanctions. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 632, 82 S.Ct. 1386, 1389–90, 8 L.Ed.2d 734 (1962).

It has been recognized that bad faith may exist not only in the original bringing of a lawsuit, but in the later conduct of the litigation, and bad faith which arises at any stage in the litigation will give rise to the court's inherent power to impose sanctions. *Hall v. Cole, supra,* at 15, 93 S.Ct. at 1951; *Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2nd Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689.

The court finds that the actions of plaintiff, as more fully determined above, constitute bad faith and abusive conduct in the course of this litigation, and an attempt to perpetrate a fraud on the court. As such, the court will impose sanctions against plaintiff pursuant to its inherent equitable power to do so.

### IV. Conclusion

Dismissal of a lawsuit, to be sure, is among the harshest of sanctions. However, the severity of the misdeed here compels such harshness. The manufactured document would have been the linchpin of plaintiff's case. Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.

In this instance, no simple mistake has occurred. Even if plaintiff were not involved directly in manufacturing Exhibit 203, she should have known and recognized it as a forgery. Even if plaintiff and her counsel were too obtuse to recognize it as a forgery, they should have acknowledged the overwhelming evidence when confronted with it. Nevertheless, the charade continued aggressively, with repeated reliance upon the document. Even after the motion for sanctions against the defendants was withdrawn, plaintiff persisted in relying upon a document which was shown to her to be fraudulent. Plaintiff's testimony about what she knew and when she knew it was disingenuous at best.

Clear and convincing evidence has been presented that plaintiff knowingly advanced a document which she knew was not what she represented it to be, and that she relied upon it in her pleadings. She repeatedly attempted to promote the use of the document on her behalf in this litigation, even though she knew it was manufactured. She acted in bad faith and with improper purpose in a manner which jeopardizes the integrity of the judicial system. Accordingly, sanctions pursuant to Rules 11, 26(g) and 41(b), may be awarded to defendants at plaintiff's expense.

It is

ORDERED that plaintiff's motion, filed March 6, 1990, to recuse is denied. It is further

ORDERED that defendants' motion, filed March 6, 1990, is granted. It is further

ORDERED that sanctions shall be imposed against plaintiff, and such sanctions shall include dismissal of this civil action with prejudice and an award to defendants of attorneys' fees and costs. It is further

ORDERED that this matter is dismissed with prejudice and costs shall be borne by plaintiff. It is further

ORDERED that, in the event plaintiff comes forward within ten days of the date of this order and produces evidence from which the court can determine that a person or persons other than plaintiff herself

was involved in fraudulently manufacturing evidence in this case, the court will consider relieving plaintiff of responsibility for part of the sanctions imposed here and imposing that part of the sanctions on the other person or persons; However, if plaintiff does not produce such evidence within ten days, she shall bear sole responsibility for sanctions. It is further

ORDERED that sanctions shall be imposed against plaintiff's attorney for failing to make reasonable inquiry about Exhibit 203 after she was presented with evidence on October 12, 1989, that it was manufactured, and for continuing to try to use the manufactured document even after October 12, 1989. It is further

ORDERED that, within 30 days of the date of this order, defendants shall file and serve upon plaintiff and her counsel a detailed claim for reasonable attorney fees and costs they would hope to recover, and the claim will include division of hourly amounts according to the days they were worked. It is further

ORDERED that, within 20 days of filing the claim for fees and costs, plaintiff may respond to the claim. It is further

ORDERED that, within 12 days of plaintiff's response, defendants may file a reply. It is further

ORDERED that the clerk of the court shall distribute copies of this order to the parties individually and to their counsel.