Maria **VARGAS**, Plaintiff,

v.

Nelson **PELTZ** and **Elliot Management Services Company, Inc.**, Defendants.

**No. 94–8041–CIV.**

United States District Court,
S.D. Florida,
West Palm Beach Division.

March 17, 1995.

the subject matter of the dispute is a New York probate proceeding.

G. Ware Cornell, Jr., G. Ware Cornell, Jr., P.A., Ft. Lauderdale, FL, for Plaintiff.

Marty L. Steinberg, Marilyn J. Holifield, Thomas H. Loffredo, Holland & Knight, Miami, Florida, for Defendants.

## ORDER OF DISMISSAL WITH PREJUDICE BASED ON FABRICATION OF EVIDENCE, PERJURY AND OBSTRUCTION OF JUSTICE

RYSKAMP, District Judge.

**THIS CAUSE** came before the Court upon Defendants Nelson Peltz and Elliot Management Services Company, Inc.'s Motions to Dismiss and for Sanctions due to fabrication of evidence, perjury and obstruction of justice by Plaintiff Maria Vargas, and third party Defendant, Gerardo Vargas. After consideration of the Motions, response thereto, and the pertinent portions of the record, as well as an evidentiary hearing and argument of counsel on March 16, 1995, the Court enters the following Order, dismissing this action with prejudice for the reasons set forth herein.

## BACKGROUND

This action was commenced on January 20, 1994 by Plaintiff and her husband Gerardo Vargas, ("Vargas"), against Elliot Management Services Company, Inc., ("Elliot Management"), and one of Elliot Management's officers and directors, Nelson Peltz. Vargas, a butler, and Plaintiff, a maid, were former employees of Elliot Management. In Count I of the complaint, Plaintiff asserted a claim under Title VII of the Civil Rights Act of 1964, as amended, 1991, 42 U.S.C. § 2000e, *et seq.*, alleging sexual harassment through a hostile working environment. In Count II, both Plaintiff and Vargas asserted claims for Title VII retaliation against Peltz and Elliot Management, alleging that they were both fired after objecting to the alleged hostile environment. Plaintiff also asserted common law claims for assault and battery and intentional infliction of emotional distress against Peltz and Elliot Management in Counts III and IV of the complaint. Specifically, Plaintiff alleged that she was sexually harassed by Peltz while she worked as a maid for Elliot Management in Peltz's suite at the Waldorf–Astoria Hotel in New York City, New York.

Peltz filed a motion to dismiss all four counts of the complaint for failure to state a cause of action, and Elliot Management challenged the state common law claims.[1] Peltz later filed a motion for summary judgment on Plaintiff's Title VII claims on the basis that he was never her "employer" as defined by Title VII. Those motions are presently pending.[2]

On September 27, 1994, after several months of discovery, Defendants filed two motions with the Court seeking dismissal and sanctions. The specific motions are Defendants' Motion to Dismiss for Fabrication of Evidence, (DE # 162), and Defendants' Motion to Dismiss and to Impose Other Sanctions for Fabrication of Evidence, Perjury, and Obstruction of Justice, (DE # 160). These motions are now fully briefed and are ripe for consideration.

---

1. Elliot Management did not challenge the allegations of the Title VII claims by way of motion to dismiss.

2. The Court has stayed all discovery and substantive matters in this case pending resolution of the Motions to Dismiss and For Sanctions.

Oral argument and an evidentiary hearing was held before the Court on March 16, 1995. After consideration of the evidence, argument of counsel, and the pertinent portions of the records, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

**a.** *The Panties*

During her deposition on May 24, 1994, Plaintiff testified under oath that Defendant Peltz gave her a pair of women's panties in September, 1992 while she worked as a maid for Elliot Management. Plaintiff actually produced a pair of women's panties from her purse during the deposition. Plaintiff further testified that Peltz asked her to pose in the panties in a position similar to that in a photograph he allegedly gave her at the same time. The photograph and panties were marked as Exhibits "69" and "70" respectively to Plaintiff's deposition.

Plaintiff specifically testified at deposition:

Q. This is a picture, can you describe who is in this picture?

A. Mr. Peltz.

Q. Okay.

A. He gave it to me, he told me, I want that pose and I want you to pose like that for me with those *panties* that I give it to you.

Maria Vargas Depo. at 173:21–174:2 (emphasis supplied). According to Maria Vargas, the events took place in September, 1992 while she worked at the Waldorf–Astoria Hotel for Elliot Management:

Q. When did Mr. Peltz give you that picture?

A. Around the end of September.

Q. End of September 1992?

A. 1992.

Q. Was this a picture he had taken of him or you had taken of him or—

A. ... So he brought me this picture and he tells me, I want you to pose just like this picture but with this surprise, just like that.

Q. **Exhibit No. 70, the panties, correct;** *with Exhibit 70, the panties, correct?*

A. *Yes.*

Maria Vargas Deposition at pp. 11. 174:20–175:1, 175:7–12 (emphasis supplied).[3]

At her August 30, 1994, deposition continuation, Plaintiff confirmed her previous testimony:

Q. And you testified about [the panties and the picture] last time and I just have a few follow-up questions. I believe you said that you received those both together, the picture and the panties together—

A. The same day.

Q. —as a present of some sort. And I believe you testified that you received them sometime in September of 1992.

A. Yes.

Q. Is that correct?

A. Yes.

Maria Vargas Deposition at pp. 11. 377:23–378:8.[4]

Elliot Management investigated the panties and determined by the identifying information on the panties that they were manufactured by Van Mar, Inc., ("Van Mar"), a manufacturer of women's apparel with offices in New York and New Jersey. *See* Affidavit of Scott Schulman, Executive Vice–President of Van Mar at ¶¶ 2, 4.[5] The panties are Van

---

**3.** The Court notes that the panties and the picture were prominently displayed by Plaintiff's counsel to a television news crew in the very deposition room where Nelson Peltz' deposition was being taken on May 25, 1994—the day following Plaintiff's deposition—during a lunch break when defense counsel and Peltz were not present. The conduct of Plaintiff's counsel resulted in the "gag" order imposed in this case by the Court, upon *ore tenus* motion by Elliot Management at hearing on June 1, 1994.

**4.** It is undisputed that Plaintiff and Vargas ceased working for Elliot Management in February, 1993.

**5.** Van Mar, the manufacturer of the panties introduced by Plaintiff during her deposition, uses a label on its clothing with the identification number "RN 60128". This number appears on the tag of the panties introduced by Plaintiff at her deposition. This identification number is referred to as the "RN Number" in the clothing industry. The manufacturer of the panties states

Mar style # 303410, and the fabric is designated by Van Mar as # 3410, "Josey's Flower Jacquard/Ivory". *Id.* at ¶¶ 4, 7. Van Mar records attached to Schulman's affidavit, as well as Schulman's personal knowledge of the panties, establish that the only time which this particular panty style was received by Van Mar and subsequently distributed exclusively through Target stores in the United States was after November 10, 1993. *Id.* at ¶ 9, and documents attached thereto.[6]

It is therefore undisputed that Plaintiff could not have received the panties from Peltz in September, 1992 since those panties were not even sold by the manufacturer—Van Mar, Inc.—until November, 1993, more than one year later. Plaintiff's testimony cannot be reconciled with this undisputed evidence presented by Elliot Management. The Court finds that Plaintiff lied and presented false evidence when she introduced the women's panties at her May 24, 1994 deposition, Exhibit 70, and offered the descriptive testimony described above under oath in support of her claims of sexual harassment.[7]

In response to Elliot Management's evidence, Plaintiff attempted to narrowly read the Van Mar affidavit to imply that even though the panties were not available in the United States, they may have been available elsewhere in the world. In response to this speculative argument, Elliot Management

presented the Supplemental Affidavit of Scott Schulman of Van Mar. Schulman's supplemental affidavit testimony makes clear that the panties were not available anywhere in the world until November, 1993, over one year after the date Plaintiff falsely alleged that Peltz gave them to her.

Even evidence obtained by Plaintiff's own counsel established that Plaintiff's introduction of the panties as evidence of sexual harassment was false. Plaintiff's investigator—Francis G. Knight of Asian Security and Investigation Services, Ltd.[8]—sent a letter to Van Mar (UK) Ltd., Van Mar's Hong Kong representative, on November 8, 1994 purportedly to investigate Elliot Management's evidence that Plaintiff's claims about the panties were false. The Knight letter listed four (4) questions to Van Mar (UK), Ltd. Each and every one of the four answers confirms what Elliot Management itself established through evidence received from Van Mar: the panties were only shipped to the United States and were not available anywhere else in the world prior to November 10, 1993 when they were first shipped to the United States. But most importantly, the panties were not even manufactured until "[a] month and a half before Nov. 10, 1993", still well over one year after Plaintiff alleges she received the panties from Peltz. The panties were not shipped anywhere but the United States, not available anywhere other

---

that the RN number 60128 was used solely by Van Mar. Schulman affidavit at ¶ 4.

Pursuant to 16 C.F.R. 301.26, 16 C.F.R. 300.4, and 16 C.F.R. 1.32, "registered identification numbers shall be used only by the person or concern to whom they are issued, and such numbers are not transferable or assignable." The RN & WPL Directory, published by PS Press, officially lists Van Mar as being assigned RN Number "RN 60128", confirming Schulman's affidavit, as well as establishing conclusively that the panties introduced by Plaintiff could *not* have been manufactured or put on the market by any other entity. Plaintiff offered no evidence to the contrary.

6. As demonstrated by the affidavit of Don Zell, there is a Target store in close proximity to Plaintiff's Florida residence, and she was identified by Target store lingerie personnel as a customer of that particular Target store. Moreover, Plaintiff stole several pairs of women's panties from a Target store prior to her May 24, 1994 deposition, and admitted that she presented one

of the stolen pairs of panties as evidence at her deposition. *See* Affidavit of Diana Lopez.

7. Plaintiff failed to seek the deposition of any representative of Van Mar, the panties' manufacturer, although Plaintiff was given a substantial period of time to investigate the panties evidence. Plaintiff was also granted custody of the panties for thirty days on November 14, 1994, but the Court is advised that neither Plaintiff's counsel, nor any agent thereof, ever took custody of the panties during that time for such investigatory purposes.

8. Francis Knight is one of the three individuals representing Plaintiff whom Magistrate Judge Vitunac authorized to take possession of the panties for investigatory purposes in her November 14, 1994 Order. However, as noted supra, the panties were never taken from Court custody by any of these agents after leave to do so was granted to Plaintiff to investigate Elliot Management's claims.

than the United States until after November 10, 1993, and were not even manufactured until more than one year after Plaintiff alleges she received them.[9]

Moreover, in an effort to determine if the panties evidence was recently manufactured, Plaintiff was questioned at deposition as to whether anyone other than she and her husband had seen the panties, and testified under oath that Plaintiff's prior counsel, James Green, Esq., had been shown the panties. Plaintiff was also asked to explain the absence of any reference to the panties in her EEOC complaint, and in two handwritten letters which described her allegations, one of which was actually filed with the EEOC. Plaintiff testified that her prior attorney, Mr. Green, had asked Plaintiff not to mention the existence of the panties in her matter before the Equal Employment Opportunity Commission, ("EEOC"). In response to Rule 31 written deposition questions served by Elliot Management, however, Mr. Green denied under oath that he had ever seen the panties, was ever apprised of the panties evidence, or that he ever instructed Plaintiff not to disclose the panties evidence to the EEOC. Based upon the evidence presented by Elliot Management, the Court finds that Plaintiff's presentation of the panties as evidence in this case was entirely fabricated, and her supporting testimony utterly false.

**b.** *State Department Letter*

On May 20, 1994, Plaintiff filed an *Ex Parte* Emergency Motion for Temporary Restraining Order and for Preliminary Injunction, (the "Emergency Motion"). In unsworn declarations in support of the Emergency Motion, Plaintiff and Gerardo Vargas stated that Plaintiff's family members in Costa Rica had received threats against Plaintiff allegedly made by representatives of Elliot Management.

The Court held a hearing on the Emergency Motion on June 1, 1994. Elliot Management, through its investigation, presented unrefuted live and affidavit testimony that conclusively demonstrated that Plaintiff's claims of threats were false. Affidavits and statements of Plaintiff's family members were introduced which directly contradicted Plaintiff's claims that threats were made by any agents of Elliot Management. Plaintiff's counsel conceded during the hearing that there was no evidence of threats, and the Court so found in denying Plaintiff's request for injunctive relief. *See* Order dated June 17, 1994, (DE # 89).

However, in an effort to augment her unfounded claims of threats by Elliot Management at that hearing, Plaintiff presented sworn testimony during her direct examination before the Court that Elliot Management attempted to "lure" her to Costa Rica to prevent her from prosecuting this case. Plaintiff introduced a May 16, 1994 letter from the United States Department of State, ("State Department letter"), requiring Plaintiff to return to her native Costa Rica for an immigration appointment. Under questioning from her own counsel, Plaintiff offered the following testimony to the Court:

> Plaintiff's Counsel: If the court please, I direct the Court's attention to the affidavit filed by the defendant, that of Carlos A. Graham, who is the chief investigator, Office of Regional Security at the United States Embassy in Costa Rica, and he is serving as [Elliot Management's] investigator.
>
> Q: [Plaintiff's Counsel]: Maria, as a result of what you were told and what you have learned and receiving this [referring to Exhibit 1, the State Department letter], are you in any fear in any way for your safety?
>
> A: [Plaintiff]: Sure I am.
>
> Q: [Plaintiff's Counsel]: Tell the Court what your concern is.
>
> A: [Plaintiff]: My concern about the [State Department] letter is that they take—they want to take me out of the country and make a report that I left this case hanging or I don't want to let my kids alone here, why did they— why they want me to go to Costa Rica now, only me, if I have to go, I have to take my kids with me because my case is together with my two little girls and

---

**9.** The Knight letter was introduced to the Court by Elliot Management, not by Plaintiff's counsel.

they don't want—they don't say anything about my two little girls, only I have to go myself.

June 1, 1994 hearing at p. 6, 11. 9–25, p. 7, 1. 1. Plaintiff attempted to persuade the Court that Elliot Management—through its investigator, Carlos Graham, a United States Embassy employee in Costa Rica—fraudulently arranged for the State Department letter to be sent to Plaintiff, purportedly scheduling Plaintiff for an immigration appointment in Costa Rica. The point of Plaintiff's testimony was to demonstrate that Elliot Management was attempting to force her to drop this case, by making alleged threats to her family members, and through the State Department letter, by attempting to "lure" her to Costa Rica and away from her children and from prosecution of this action.

The Court finds, however, that Plaintiff lied and presented fabricated evidence to the Court at the June 1, 1994 hearing in the form of the State Department letter and her false testimony concerning the source of that letter.[10] Elliot Management submitted the sworn affidavit of Jose Latour, Esq. as evidence of Plaintiff's fabrication of evidence. Mr. Latour served as a visa officer in Africa and Mexico, and as Chief of the Non–Immigrant Visa section of the United States Consulate in Juarez, Mexico from 1987–1988. Mr. Latour is an expert on immigration law, and particularly with regard to the proceedings necessary for obtaining permanent residence in the United States.

After his review of the documents provided to him,[11] Mr. Latour concluded that the State Department letter introduced as evidence by Plaintiff against Elliot Management was issued as a direct result of the proceedings which Plaintiff herself instituted to become a permanent resident in the United States. Latour Affidavit. Plaintiff and her husband filed a Form I–130, a Visa Petition for Permanent United States Residency on March 11, 1992, (the "petition"). *Id.* at ¶ 5. Plaintiff's status was upgraded instantly on January 25, 1994 when her husband became a naturalized citizen. *Id.* at ¶ 9. Since Plaintiff entered the United States without inspection, she had to go to the United States Consulate which had been designated on her petition, namely the Costa Rican Consulate. *Id.* at ¶ 10.

Based upon Plaintiff's upgraded status—of which the Immigration and Naturalization Service was notified by Plaintiff's own immigration counsel—Plaintiff's approved petition was sent to the Consulate in Costa Rica. Latour affidavit at ¶¶ 11–12. Thereafter, Plaintiff was notified of the Consulate's receipt of her approved petition, and she then completed and returned the necessary forms to the Consulate. *Id.* at ¶ 13–14. Plaintiff's completion of the forms resulted in the issuance of the State Department letter requiring her to travel to the Consulate in Costa Rica. *Id.* at ¶ 15. This is the very same letter which she introduced as evidence against Elliot Management before the Court on June 1, 1994.

The immigration proceedings instituted by Plaintiff herself are confirmed by both her and her husband Vargas' own deposition testimony. At her deposition, just one week prior to the June 1, 1994 hearing, Plaintiff testified under oath that she had indeed instituted proceedings with INS through her attorney in Miami for permanent residency in this country. *See* Plaintiff's Deposition at pp. 118–121. Moreover, Gerardo Vargas, at his deposition, testified:

Yes, she [Plaintiff's immigration attorney] have U.S. papers from immigration that we—that she have all the papers from Immigration and **she is waiting for her appointment to pick up the green card in Costa Rica.**

---

**10.** Plaintiff's counsel represented to the Court that the envelope within which the State Department letter was delivered to Plaintiff would be made available for inspection by Elliot Management's counsel. The envelope could not be located by Plaintiff's counsel one day after the June 1, 1994 hearing, and to date has never been produced by Plaintiff's counsel.

**11.** The documents reviewed by Mr. Latour include Plaintiff's testimony in this case, testimony of Gerardo Vargas, various motions in the case, the State Department letter at issue, and documents contained in the State Department file on Plaintiff which were produced upon entry of a court order compelling production sought by Elliot Management.

Deposition of Gerardo Vargas, p. 112, 11. 7–10 (emphasis supplied). Moreover, at her August 30, 1994 deposition continuation, Plaintiff testified that **the day after** she received the State Department letter—thus, prior to the June 1, 1994 hearing before this Court—she confirmed with her immigration attorney that the appointment was legitimate, and that Plaintiff would have to travel to Costa Rica. *See* Plaintiff's August 30, 1994 Deposition at p. 340, 11. 24–25, p. 341, 11. 1–4, 17–20.

It is clear that both Plaintiff and her husband were well aware that the immigration proceedings which they instituted for Plaintiff to receive permanent resident status would require Plaintiff to travel to Costa Rica, and that they were in fact waiting for that very appointment at the time of the June 1, 1994 hearing. One day after she received the expected letter, Plaintiff confirmed with her immigration attorney and was specifically told that the appointment was legitimate. The Court therefore finds that Plaintiff lied and presented false evidence to the Court when she testified and introduced the State Department letter at the June 1, 1994 hearing. The false introduction of the panties evidence, as well as the fabricated use of the State Department letter requires imposition of sanctions against Plaintiff, including dismissal of this action against Elliot Management and Peltz.

### c. *Other Litigation Misconduct*

In addition to the foregoing incidents of perjury and fabrication of evidence, the Court finds numerous other incidents of similar serious litigation misconduct committed by Plaintiff and Gerardo Vargas. This Court denied Plaintiff's *Ex Parte* Emergency Motion for Temporary Restraining Order and for Preliminary Injunction after hearing on June 1, 1994, in which this Court stated: "Lastly, during Defendants' cross-examination, [Plaintiff] admitted to activity which *seriously questions her credibility,* such as illegally entering the United States, partici-

pating in falsifying or presenting to an employer her false birth records and providing false information on employment applications." *See* Court Order denying Plaintiff's *Ex Parte* Emergency Motion for Temporary Restraining Order (emphasis supplied). Plaintiff's testimony before the Court alleging threats made to her family members in Costa Rica was patently false. The Court finds that Plaintiff and Gerardo Vargas obstructed discovery through repeated lying at deposition. Specifically, both Plaintiff and Vargas denied any involvement in dealing in jewelry, even though Elliot Management presented witness and documentary evidence to the contrary. This misconduct prejudiced Elliot Management in the pursuit of its counterclaims against Plaintiff and Vargas, as well as in its investigation of Plaintiff's claims since both involve the stolen silver picture frame which at one time contained the picture of Peltz which Plaintiff introduced at her deposition. The obstruction of discovery into issues relating to dealing in jewelry was intentional, fraudulent, and requires imposition of sanctions.

Moreover, Elliot Management's Motion to Dismiss and to Impose Other Sanctions, and the appendix filed therewith, documents a litany of lies told by Plaintiff and Gerardo Vargas during discovery in this case, introduction of fabricated evidence as well as obstructionist tactics employed solely to frustrate Elliot Management's ability to defend itself in this action and its pursuit of asserted counterclaims. Despite the substantial period of time from September of 1994 to the date of the evidentiary hearing on March 16, 1995, Plaintiff has failed to refute the evidence presented by Elliot Management. The Court specifically finds that Plaintiff and Gerardo Vargas committed numerous acts of perjury, fabrication of evidence, obstruction of justice, and obstruction of discovery which has resulted in a gross abuse of the discovery and judicial process in this case. The imposition of severe sanctions is warranted by this intentional misconduct.[12]

---

12. Plaintiff offered no evidence in response to Elliot Management's evidentiary showing, but rather sought to rely upon polygraph evidence to bolster her credibility in this action. Plaintiff's request is denied, and Elliot Management's Motion to Strike is granted, as admission of such information is an improper application of Federal Rule of Evidence 608 under *U.S. v. Piccinon-*

## CONCLUSIONS OF LAW

### a. *Imposition of Sanction of Dismissal*

■ The federal district courts of this nation possess the inherent power to regulate litigation and to sanction litigants for abusive practices. *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 126 (S.D.Fla.1987); *see also Aoude v. Mobil Oil Corporation*, 892 F.2d 1115, 1118 (1st Cir.1989) (District Court possesses the inherent power to deny court's processes to one "who defiles the judicial system by committing a fraud on the court"); *Sun World, Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384, 389 (E.D.Cal.1992) (district court has inherent power to impose sanction of dismissal or default judgment). The power of any court to manage its own affairs, which necessarily includes the authority to impose reasonable and appropriate sanctions on the parties to litigation before it, is deeply rooted in the common law tradition. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545–6 (11th Cir.1993), *cert. den.*, —— U.S. ——, 114 S.Ct. 181, 126 L.Ed.2d 140 (1993).[13]

■ Dismissal is appropriate where:

a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

*See Aoude*, 892 F.2d at 1118 (cause of action dismissed for "fraud on the court" where plaintiff attached a bogus agreement to the complaint). The undisputed evidence presented to the Court establishes that such a fraud has been perpetrated here by Plaintiff and her husband Gerardo Vargas justifying imposition of the sanction of dismissal with prejudice and related sanctions.

■ The cases cited by Elliot Management in which federal courts dismissed claims for a party's fabrication of evidence are particularly applicable here. *See e.g. Pope v. Federal Express Corporation*, 138 F.R.D. 675 (W.D.Mo.1990), *aff'd in relevant part*, 974 F.2d 982 (8th Cir.1992) (plaintiff's action for sexual harassment dismissed where plaintiff manufactured alleged note containing improper remarks from supervisor); *Aoude v. Mobil Oil Corporation*, 892 F.2d 1115, 1118 (1st Cir.1989) (cause of action dismissed for "fraud on the court" where plaintiff attached a bogus agreement to the complaint).

Indeed, Plaintiff's intentional misconduct in presenting false evidence in support of her claims compels dismissal of this case. The present circumstances are similar, but substantially more egregious than to those presented to the District Court in *Pope v. Federal Express Corp.*, 138 F.R.D. 675 (W.D.Mo. 1990), *aff'd in relevant part*, 974 F.2d 982 (8th Cir.1992). In *Pope*, a former employee sued her former supervisor and Federal Express alleging sexual harassment by the supervisor. During discovery the plaintiff produced a photocopy of an alleged handwritten note from her former supervisor which read,

---

na, 885 F.2d 1529 (11th Cir.1989). Moreover, the polygraph results are also excluded under Federal Rule of Evidence 403 as its admission would not aid the trier of fact, tends to confuse issues before this Court, and needlessly delays the resolution of this matter. Gerardo Vargas offered absolutely no response to the evidence presented by Elliot Management.

13. ... It has long been understood that "certain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *United States v. Hudson*, 7 Cranch 32, 34 3 L.Ed. 259 (1812); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing *Hudson*). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their mandates...." These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388–1389, 8 L.Ed.2d 734 (1962).
* * *
* * * A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. As we recognized in *Roadway Express*, outright dismissal of a lawsuit, which we had upheld in *Link*, ... is within the court's discretion. 447 U.S., at 765, 100 S.Ct., at 2463.
*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991).

**1580**

"Carol, you *'feel'* good! *Danny.*" *Id.* at 677 (emphasis in original). The plaintiff represented that the note was written by her supervisor and left on her desk during her employment. *Id.*

After conducting an investigation concerning the authenticity of the document, Federal Express determined that the document was manufactured either by plaintiff, or at her direction. Federal Express moved for sanctions for the plaintiff's bad faith litigation tactic, including dismissal of the suit in accordance with several provisions of the Federal Rules of Civil Procedure.

The District Court in *Pope* concluded that the document was indeed manufactured. Accordingly, the *Pope* court found that the plaintiff lied in her deposition concerning the note, and knowingly made false references to the note in various discovery responses and pleadings filed with the Court. *Pope,* 138 F.R.D. at 678–680. The Court found that plaintiff and her attorney violated Rule 11 and that plaintiff violated Rule 26 of the Federal Rules of Civil Procedure because of her repeated false statements and references to the manufactured document throughout the litigation. The Court entered dismissal with prejudice of the action under Rule 41(b) and its own inherent power to impose sanctions upon a party which "has engaged in bad faith or abusive practices in conducting litigation". *Pope,* 138 F.R.D. at 682, 683 (citations omitted).

The District Court in *Pope* concluded:

Clear and convincing evidence has been presented that *plaintiff knowingly advanced a document which she knew was not what she represented it to be,* and that she relied upon it in her pleadings. She repeatedly attempted to promote the use of the document on her behalf in this litigation, even though she knew it was manufactured. She acted in bad faith and with improper purpose in a manner which jeopardizes the integrity of the judicial system. Accordingly, sanctions pursuant to Rules 11, 26(g) and 41(b), may be awarded to defendants at plaintiff's expense.

*Pope,* 138 F.R.D. at 683 (entering sanctions, including dismissal of action, against plaintiff for fabrication of evidence) (emphasis supplied).

In affirming the district court's dismissal of the lying plaintiff's sexual harassment claims, the Eighth Circuit Court stated:

The dismissal of Pope's suit was based on the district court's finding that *manufactured evidence and perjured testimony had been introduced in an effort to enhance the case through fraudulent conduct.* When a litigant's conduct abuses the judicial process, the Supreme Court has recognized dismissal of a lawsuit to be a remedy within the inherent power of the court.

*Pope,* 974 F.2d at 984 (emphasis supplied). *Pope* is directly on point. Like the plaintiff in *Pope,* Plaintiff here attempted, by fraudulent means, to "enhance" her case through the introduction of fabricated women's panties and through fictionalized testimony concerning how she supposedly received the panties. Plaintiff "fabricated" the panties evidence and the story that Peltz gave them to her while she worked for Elliot Management in an effort to deceive the Court, Peltz, Elliot Management, and eventually, the trier of fact. Plaintiff fabricated the panties' evidence "in bad faith and with improper purpose in a manner which jeopardizes the integrity of the judicial system." *Pope,* 138 F.R.D. at 683. This intentional fraud upon the court requires dismissal of this action. *Pope, Aoude, supra.*

Where, as here, the fabricated evidence undermines the theory in the case, dismissal is particularly appropriate. In *Nichols v. Klein Tools, Inc.,* 949 F.2d 1047 (8th Cir. 1991), the plaintiff sued a snap hook manufacturer in a products liability action alleging that the failure of the snap hook caused his fall and resulting injuries. Plaintiff, however, was not using a snap hook made by the manufacturer-defendant when the accident occurred—he was wearing his own homemade hook. *Id.* at 1047, 1048. The District Court in *Nichols* found that the plaintiff lied repeatedly about the hook, the pivotal issue in the case, and accordingly dismissed his action for fraud upon the court. *Id.* The Eighth Circuit Court affirmed the dismissal,

finding no "alternative penalty" for the plaintiff's fraudulent litigation conduct. *Id.*

Like the actions taken by the *Nichols* plaintiff, the intentional misconduct committed by Plaintiff and Gerardo Vargas in fabricating evidence justifies dismissal of this action. *Nichols*, 949 F.2d at 1048; *see also Aoude v. Mobil Oil Corporation*, 892 F.2d 1115, 1118 (1st Cir.1989) (cause of action dismissed for "fraud on the court" where plaintiff attached a bogus agreement to the complaint); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir.1987) (default entered where defendant engaged in elaborate scheme involving perjury designed to willfully deceive the court); *Sun World, Inc. v. Olivarria*, 144 F.R.D. 384, 390 (E.D.Cal.1992) (default judgment appropriate where plaintiff submitted false document and committed perjury in furtherance of fraud); *Eppes v. Snowden*, 656 F.Supp. 1267, 1279 (E.D.Ky.1986) (defendant's answer and counterclaim stricken where defendant committed "fraud on the court" by producing "backdated" letters).

False evidence in the form of women's panties indeed concern the central issue in this case—i.e., claims of sexual harassment against Elliot Management. The federal case law is well established that dismissal is the appropriate sanction where a party manufactures evidence which purports to corroborate its substantive claims. *Pope, supra* (plaintiff's manufacture of "love letter" allegedly received from supervisor as evidence of alleged sexual harassment in Title VII warranted dismissal); *Aoude, supra* (dismissal appropriate where plaintiff attached bogus agreement to complaint); *Nichols, supra* (plaintiff's action dismissed for fraud on the court where plaintiff lied on the pivotal issue in the case as to whether he was using the defendant's product at the time of the alleged accident; court found no "alternative penalty" available for plaintiff's fraudulent litigation misconduct in repeatedly testifying that he was using defendant's product when he was really using his own homemade product at time of accident).

The Court further finds that Plaintiff's fabrication of evidence and false testimony before the Court at the June 1, 1994 hearing concerning the State Department letter also requires dismissal of this action as a sanction.

Moreover, Plaintiff's and Gerardo Vargas' pervasive litigation misconduct, perjury and obstruction of discovery related to the litany of matters presented in Elliot Management's unrefuted pleadings and appendices also warrants imposition of sanctions. It is firmly established that this court has the inherent power to dismiss an action when a party conducts litigation in "bad faith" and in an abusive manner. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–48, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991); *Sun World, Inc. v. Olivarria*, 144 F.R.D. 384, 390 (E.D.Cal. 1992); *Pope v. Federal Express Corp.*, 138 F.R.D. 675, 683 (W.D.Mo.1990); *Hilgeford v. Peoples Bank, Inc.*, 113 F.R.D. 161, 163 (N.D.Ind.1986). The Supreme Court held in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–48, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991):

> We discern no basis for holding that the sanctioning scheme of the statute or of the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above. These other mechanisms taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions. First, whereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to *a full range of litigation abuses.*

*Id.* In *Chambers*, the Supreme Court expressly stated that dismissal is an appropriate sanction for abusive litigation practices. *Id.* at 43–46, 111 S.Ct. at 2132–33. Moreover, Courts have relied on a variety of rules in dismissing cases for misconduct similar to but much less pervasive than Plaintiff's misconduct. *See e.g., Sun World, Inc. v. Olivarria*, 144 F.R.D. at 390 (court struck answer, dismissed counterclaim, and ordered entry of default pursuant to Rule 11); *Weinstein v. Ehrenhaus*, 119 F.R.D. 355, 359 (S.D.N.Y. 1988) (case dismissed under Rule 37).

The persistent pattern of misconduct committed by Plaintiff and Gerardo Vargas, which includes a "fraud on the court," fabri-

cation of evidence, perjury, and obstruction of the discovery process, covers the "full range of litigation abuses" and warrants dismissal of the present action. Elliot Management has presented conclusive and unrefuted evidence establishing that Plaintiff and Gerardo Vargas presented false evidence and committed numerous acts of perjury. Further, Plaintiff and Gerardo Vargas have also continuously obstructed and abused the discovery process. Plaintiff and Vargas committed countless acts of perjury—including perjury at deposition and before the Court—which obstructed justice and frustrated Elliot Management's ability to conduct critical discovery and to defend itself against Plaintiff's allegations. This misconduct was designed to and had the effect of severely obstructing the discovery process and impeding Elliot Management's ability to conduct discovery vital to its defense and to the pursuit of its counterclaim.

Federal courts have the inherent power to dismiss an action for misconduct that abuses the judicial process and threatens the integrity of that process—including misconduct unrelated to the merits of the case. *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962) (Supreme Court affirmed district court's exercise of its inherent power to dismiss claim for failure to appear at pre-trial conference); *Amway Corp. v. Shapiro Express Co., Inc.*, 102 F.R.D. 564, 565–70 (S.D.N.Y.1984) (complaint stricken for repeated perjury at deposition). Accordingly, in addition to Plaintiff's and Vargas' fabrication of evidence, their "bad faith" litigation tactics warrants dismissal of this cause.

The Court finds that the cases cited by Elliot Management *supra* state the correct standard to be applied by the Court where a party fabricates evidence and commits a fraud upon the Court, as well as abuses the litigation process. Elliot Management's sanctions motions conclusively establish Plaintiff's and Gerardo Vargas' intentional

and fraudulent "bad faith" litigation misconduct in furtherance of their claims through fabricating evidence, committing perjury, and obstructing discovery and justice. This Court stayed all substantive discovery pending resolution of the motions to dismiss and for sanctions for the very reason of determining if Plaintiff has abused the process of the Court which would subject her claims to dismissal.[14] The factual record establishes conclusively that Plaintiff's and Gerardo Vargas' fraudulent activities within this litigation warrant imposition of the sanction of dismissal to prevent any further litigation misconduct.

> Dismissal of a lawsuit, to be sure, is among the harshest of sanctions. However, the severity of the misdeed here compels such harshness. The manufactured document would have been the linchpin of the plaintiff's case. Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. *Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.*

*Pope*, 138 F.R.D. at 683. Plaintiff and Vargas attempted to obtain judicial relief based upon fraudulent means. A "fraud upon the Court" was perpetrated, and accordingly, this action is dismissed with prejudice.

#### b. *Other Sanctions*

First, the Court reserves ruling on the issue of imposition of monetary sanctions against Plaintiff and Gerardo Vargas, and will direct Elliot Management to supplement its Sanctions Motions on this issue.

Second, the Court notes that a "gag" order was previously entered in this case—restricting dissemination of information to the media given the nature of the case—upon *ore tenus* motion of Elliot Management at hearing on June 1, 1994.[15] The "gag" order was a result

---

**14.** On October 13, 1994, Magistrate Vitunac granted Elliot Management's Motion for Limited Stay of Discovery, restricting all discovery to only those issues relating to the pending Motions to Dismiss and for Sanctions, and precluding discovery relating to the merits of this case.

**15.** The Order was entered on June 14, 1994, (DE # 78).

of unfair, false and inaccurate representations made by Plaintiff, Vargas, and their counsel concerning Peltz and Elliot Management which were detrimental and prejudicial. The Court agrees and finds that the "gag" order should be lifted in accordance with the Court's findings herein to permit Elliot Management and Peltz to attempt to counter the harm done to their reputations by Plaintiff's false claims.

## CONCLUSION

Accordingly, based upon the foregoing, it is hereby

**ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss with Prejudice for Fabrication of Evidence (DE # 162) is **GRANTED;**

2. Defendants' Motion to Dismiss with Prejudice and to Impose Other Sanctions for Fabrication of Evidence, Perjury, and Obstruction of Justice (DE # 160) is **GRANTED;**

3. Plaintiff's and Gerardo Vargas' claims against Defendants are **DISMISSED WITH PREJUDICE;**

4. The Order restricting publicity of case (DE # 78) is hereby **VACATED** and Elliot Management and Peltz may disclose information arising in this action; and

5. The Court shall retain jurisdiction over this action to entertain defense motions, including but not limited to request for monetary sanctions against Plaintiff and Gerardo Vargas, and motion for entry of default judgment against Gerardo Vargas on the Third Party Complaint.

The Clerk of Court shall CLOSE the case and DENY ALL PENDING MOTIONS AS MOOT.

**DONE AND ORDERED.**